## MEANS v. UNITED STATES.
### No. H—366.

Court of Claims.
April 7, 1930.

John M. Perry, of New York City (Larkin, Rathbone & Perry and John ·W. Drye, Jr., all of New York City, on the brief), for plaintiff.

Fred K. Dyar, of Washington, D. C., B. M. Parmenter, Asst. Atty. Gen., and Chas. F. Kincheloe, of Washington, D. C., for the United States.

Before BOOTH, Chief Justice, and GRAHAM, GREEN, LITTLETON, and WILLIAMS, Judges.

WILLIAMS, Judge.

This is a suit to recover a sum of $32,810.42 paid as a gift tax by plaintiff for the year 1924 under the provisions of sections 319 and 320, Revenue Act of 1924, 43 Stat. 253, 313, 314 (26 USCA §§ 1131 note, 1132 note).

On July 7, 1923, the plaintiff assigned certain securities and property to the Central Union Trust Company of New York and Oliver W. Means, as trustees, under and by virtue of three certain indentures of trust duly executed on that day by the plaintiff with the said trust company and said Oliver W. Means, as trustees, for the benefit re-

spectively of the three children of the plaintiff.

On May 24, 1924, the plaintiff transferred and assigned certain securities and property to the Central Union Trust Company of New York, as trustee, under and by virtue of a certain indenture of trust duly executed on that date by the plaintiff with said trust company, as trustee, for the benefit of plaintiff's husband, Oliver W. Means.

In each of said indentures of trust the right of revocation was reserved to the plaintiff. On the 27th day of June, 1924, the plaintiff, by appropriate instruments, surrendered these rights of revocation.

■ The plaintiff in the original brief and argument raised the question of the constitutionality of the gift tax provisions of the Revenue Act of 1924. This point has been disposed of by the Supreme Court of the United States in the case of Bromley v. McCaughn, 280 U. S. 124, 50 S. Ct. 46, 74 L. Ed. ——, in which the constitutionality of the gift tax was sustained.

■ With the elimination of this point from the case the sole question left for the determination of the court is whether the gifts in question were made before or subsequent to the effective date of the Revenue Act of 1924. By its terms (section 1104) the act took effect upon its enactment, which date is June 2, 1924.

If the gifts were made subsequent to that date they are taxable; if, as contended by the plaintiff, they were made prior to that date, they are under the authority of Blodgett v. Holden, 275 U. S. 142, 48 S. Ct. 105, 72 L. Ed. 206, and Untermyer v. Anderson, 276 U. S. 440, 48 S. Ct. 353, 72 L. Ed. 645, not subject to the tax, and plaintiff is entitled to the amount of the taxes, $32,810.42.

The plaintiff contends that the gifts were made on the dates of the execution of the trust indentures and the transfer of the properties to the trustees, which dates were prior to June 2, 1924, and that the formal surrender of the rights of revocation later, June 27, 1924, by the plaintiff was immaterial and in no way affected the date on which the properties were "transferred by gift."

The government, on the other hand, contends the "transfer by gift" within the meaning of the statute was, on June 27, 1924, when the plaintiff by formal act waived, canceled, and annulled the right previously reserved to revoke the various indentures of trust.

The taxes in question were imposed under the following sections of the Revenue Act of 1924:

"Sec. 319. For the calendar year 1924 and each calendar year thereafter, a tax equal to the sum of the following is hereby imposed upon the transfer by a resident by gift during such calendar year of any property wherever situated, whether made directly or indirectly, and upon the transfer by a nonresident by gift during such calendar year of any property situated within the United States, whether made directly or indirectly. * * *"

"Sec. 320. If the gift is made in property, the fair market value thereof at the date of the gift shall be considered the amount of the gift. Where property is sold or exchanged for less than a fair consideration in money or money's worth, then the amount by which the fair market value of the property exceeded the consideration received shall, for the purpose of the tax imposed by section 319, be deemed a gift, and shall be included in computing the amount of gifts made during the calendar year."

The applicable regulations of the Treasury Department (article 1 of Regulations 67) promulgated November 8, 1924, provides: "The creation of a trust, where the grantor retains the power to revest in himself title to the corpus of the trust, does not constitute a gift subject to tax, but the annual income of the trust which is paid over to the beneficiary shall be treated as a taxable gift for the year in which so paid. Where the power retained by the grantor to revest in himself title to the corpus is not exercised, a taxable transfer will be treated as taking place in the year in which such power is terminated."

While the legal effect of the reservation of the right of revocation in a transfer of property by gift under the Revenue Act of 1924, as to the effective date of such transfer, has not been passed upon by the Supreme Court, that court has, we think, in numerous cases where practically the same question has arisen in construing "the transfer" of property under other revenue acts, announced a rule that is both applicable and controlling in the instant case.

In Saltonstall v. Saltonstall, 276 U. S. 260, 48 S. Ct. 225, 226, 72 L. Ed. 565, the Supreme Court interpreted a Massachusetts statute, which imposed a tax on all property passing by will, intestate succession, or gift "made or intended to take effect in posses-

sion or enjoyment after the death of the grantor or donor." The tax was made applicable only to property or interests therein "passing or accruing upon the death of persons who die subsequently to the passage hereof." The statute was enacted in 1916.

At various dates between 1905 and 1907, P. C. Brooks by indenture transferred to trustees, certain property upon trust, to pay the income to him for life or, at his option, to allow it to accumulate, and upon the death of himself and his wife to pay the income to his children, grantees in the trust indentures.

The trust instrument provided that its terms might be changed and the trust terminated in whole or in part by the grantor, the said P. C. Brooks, with the concurrence of one trustee. The settlor died after the enactment of the 1916 statute, without having exercised the powers of revocation contained in the deeds of trust and the tax provided in the statute was imposed on the proceeds of the trust estates.

The validity of the tax was challenged by the beneficiaries of said trust estates, and it was contended that the statute as interpreted deprived them of property without due process because they were taxed on an interest they had already received before the enactment of the taxing acts. It was urged they had vested interests or remainders subject only to being divested by the exercise of the reserved power, which never happened, and that as their remainders vested before the enactment of the taxing statutes these could not be constitutionally applied to them under the rule announced by the Supreme Court in Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081.

In passing upon this question the court said:

"In Nichols v. Coolidge it was held that under the estate tax sections of the Revenue Act of 1919 ′ * ′ which tax the privilege of transmission, Nichols v. Coolidge, supra; New York Trust Co. v. Eisner, 256 U. S. 345, 41 S. Ct. 506, 65 L. Ed. 963, 16 A. L. R. 660—property of which a donor had made an outright conveyance several years before the enactment of the statute could not, on his death after its enactment, be included as part of his taxable gross estate at its value at the time of his death. But we are here concerned, not with a tax on the privilege of transmission, not with an attempt to tax a donor's estate for an absolute gift made when no tax was thought of, and to do so

at the probably appreciated value which the gift now bears, but with a tax on the privilege of succession, which also may constitutionally be subjected to a tax by the state whether occasioned by death, Stebbins v. Riley [268 U. S. 137, 45 S. Ct. 424, 69 L. Ed. 884, 44 A. L. R. 1454], supra, or effected by deed, Keeney v. New York, 222 U. S. 525, 32 S. Ct. 105, 56 L. Ed. 299, 38 L. R. A. (N. S.) 1139; Chanler v. Kelsey [205 U. S. 466, 27 S. Ct. 550, 51 L. Ed. 882], supra; Nickel v. Cole [256 U. S. 222, 41 S. Ct. 467, 65 L. Ed. 900], supra. .

"The present tax is not laid on the donor, but on the beneficiary; the gift taxed is not one long since completed, but one which never passed to the beneficiaries beyond recall until the death of the donor. * * *

"A power of appointment reserved by the donor leaves the transfer, as to him, incomplete and subject to tax. Bullen v. Wisconsin, 240 U. S. 625, 36 S. Ct. 473, 60 L. Ed. 830. The beneficiary's acquisition of the property is equally incomplete whether the power be reserved to the donor or another. And so the property passing to the beneficiaries here was acquired only because of default in the exercise of the power during the donor's life. * * * ″

The same question was discussed by the Supreme Court in Chase National Bank v. United States, 278 U. S. 327, 49 S. Ct. 126, 127, 73 L. Ed. 405, 63 A. L. R. 388.

Section 401 of the Revenue Act of 1921, (42 Stat. 277) imposed a tax on "the transfer of the net estate of every decedent" dying after the passage of the act, and section 402 provided that in valuing the gross estate from which the net income is computed, there shall be included the amount, over an exemption, "receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life."

After the effective date of this act a Mr. Brown procured three insurance policies on his life, in each of which his wife was named as beneficiary. He reserved to himself in each policy the right to change beneficiaries. He died without having exercised the powers of revocation, and the beneficiary named was paid the amount of the policies. In computing his net estate subject to the transfer tax under the provisions of sections 401 and 402 of the act, the commissioner included the proceeds of these policies less exemptions.

It was contended on behalf of the estate that the part of the taxes based on the proceeds of the insurance policies were illegally

assessed and collected on the ground: (1) The decedent had no interest which could or did cease at his death, and no interest passed from him to any beneficiary upon his death since their interest in the policies had vested in them some years previous to his death. (2) The decedent neither owned the policies, nor did he exercise by will or deed, to take effect at death, any rights of ownership over these policies; he neither disposed of them nor authorized another to dispose of them; there was no cessation of his interest upon his death, and no transfer of such interest, to another since the property rights in the policies were already in the beneficiaries prior to his death.

In passing upon the question, the court said:

"It is true, as emphasized by plaintiff, that the interest of the beneficiaries in the insurance policies effected by decedent 'vested' in them before his death and that the proceeds of the policies came to the beneficiaries, not directly from the decedent, but from the insurer. But until the moment of death the decedent retained a legal interest in the policies which gave him the power of disposition of them and their proceeds as completely as if he were himself the beneficiary of them. The precise question presented is whether the termination at death of that power and the consequent passing to the designated beneficiaries of all rights under the policies freed of the possibility of its exercise may be the legitimate subject of a transfer tax, as is true of the termination by death of any of the other legal incidents of property through which its use or economic enjoyment may be controlled.

"A power in the decedent to surrender and cancel the policies, to pledge them as security for loans and the power to dispose of them and their proceeds for his own benefit during his life which subjects them to the control of a bankruptcy court for the benefit of his creditors, Cohen v. Samuels, 245 U. S. 50, 38 S. Ct. 36, 62 L. Ed. 143, * * * and which may, under local law applicable to the parties here, subject them in part to the payment of his debts, Domestic Relations Law, N. Y. (chapter 14, Consol. Laws), § 52; Kittel v. Domeyer, 175 N. Y. 205, 67 N. E. 433; Guardian Trust Co. v. Straus, 139 App. Div. 884, 123 N. Y. S. 852, affirmed 201 N. Y. 546, 95 N. E. 1129, is by no means the least substantial of the legal incidents of ownership, and its termination at his death so as to free the beneficiaries of

the policy from the possibility of its exercise would seem to be no less a transfer within the reach of the taxing power than a transfer effected in other ways through death. * * *

"We think the rule applied in Saltonstall v. Saltonstall, supra [276 U. S. 260, 48 S. Ct. 225, 72 L. Ed. 565], to a succession tax is equally applicable to a transfer tax where, as here, the power of disposition is reserved exclusively to the transferor for his own benefit. Such an outstanding power residing exclusively in a donor to recall a gift after it is made is a limitation on the gift which makes it incomplete as to the donor as well as to the donee, and we think that the termination of such a power at death may also be the appropriate subject of a tax upon transfers."

In Reinecke, Collector v. Northern Trust Co., 278 U. S. 339, 49 S. Ct. 123, 124, 73 L. Ed. 410, a testator in his lifetime conveyed property in trust to pay the income to himself, and on his death to pay it to designated persons until termination of the respective trusts, with remainders over. Each trust instrument reserved to the settlor alone the power to revoke the trust created by it, and provided that upon the exercise of that power the corpus of the trust must be returned to him by the trustee. The trusts were not in contemplation of death and were created before the effective date of the Revenue Act of 1921, but the settlor died after that date without having revoked them. The court held the estate tax levied on the corpus of the trust under sections 401 and 402 of the Revenue Act of 1921 (42 Stat. 277, 278) valid, and said:

"As to the two trusts, it is argued that since they were created long before the passage of any statute imposing an estate tax the taxing statute if applied to them is unconstitutional and void, because retroactive, within the ruling of Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. Ed. 1184, 52 A. L. R. 1081. In that case it was held that the provisions of the similar section 402 of the 1918 act, 40 Stat. 1097, making it applicable to trusts created before the passage of the act was in conflict with the Fifth Amendment of the Federal Constitution and void as respects transfers completed before any such statute was enacted. But in Chase National Bank v. United States, * * * decided this day, the decision is rested on the ground, earlier suggested with respect to the Fourteenth Amendment in Saltonstall v. Sal-

tonstall, 276 U. S. 260, 271, 48 S. Ct. 225, 72 L. Ed. 565, that a transfer made subject to a power of revocation in the transferor, terminable at his death, is not complete until his death. Hence section 402, as applied to the present transfers, is not retroactive since his death follows the passage of the statute. For that reason, stated more at length in our opinion in Chase National Bank v. United States, supra, we hold that the tax was rightly imposed. * * *"

In these cases the precise question determined by the court was the effective date, within the meaning of the taxing statutes, of the transfer of property where the donor in trust instruments had reserved to himself the unrestricted rights of revocation.

The court held in each case that the transfer was made when the possibility of the exercise of the rights of revocation ceased to exist; that until that time the gift was incomplete both to the donor and to the donee.

The fact that in the cases cited the rights of revocation were terminated and the gifts made complete by the death of the donors is, in our opinion, wholly immaterial. The important fact is that the property was transferred and became subject to the transfer tax on the date of the termination of the rights of revocation. It was the freeing of the property transferred from the possibility of the exercise of the rights of revocation that effected the transfer and subjected the corpus of the gifts to the taxes imposed on such transfers.

While the taxes in question here were imposed under the gift tax provisions of the act of 1924 and in that respect are distinguished from the transfers of property considered by the court in Saltonstall v. Saltonstall, Chase National Bank v. United States, and Reinecke v. Northern Trust Co., supra, the question involved is identical with that before the court in each of these cases.

It is our opinion, therefore, that the date of the "transfer by gift" of the property in question was on June 27, 1924, when the plaintiff canceled and formally surrendered the powers of revocation reserved to herself in the instruments of trust. This being subsequent to the enactment and approval by the President of the Revenue Act of 1924, the taxes herein were legally and properly assessed and the commissioner was correct in denying the claim for refund.

Plaintiff's petition is hereby dismissed. It is so ordered.