**DENNISTON v. COMMISSIONER OF INTERNAL REVENUE (two cases).**

**PENNSYLVANIA CO. FOR INSURANCES ON LIVES & GRANTING ANNUITIES et al. v. SAME.**

**Nos. 7001–7003.**

Circuit Court of Appeals, Third Circuit.
Nov. 1, 1939.

Joseph S. Clark and Murray H. Spahr, Jr., both of Philadelphia, Pa., for petitioners.

James W. Morris, Asst. Atty. Gen., and Sewall Key and John J. Pringle, Jr., Sp. Assts. to Atty. Gen., for respondent.

Hugh Satterlee, of Washington, D. C., amicus curiae.

Before BIGGS, MARIS, and BIDDLE, Circuit Judges.

MARIS, Circuit Judge.

These petitions for review of decisions of the Board of Tax Appeals involve an estate tax deficiency assessed against the executor of the estate of Eleanor H. Denniston and against trustees to whom she had in her lifetime transferred her property.

Eleanor H. Denniston, the decedent, was born on May 6, 1857, and died March 13, 1934. On May 10, 1915, she executed a deed of trust assigning certain securities to two trustees. Under the deed she reserved the income to herself for life, and also reserved a power to appoint the principal by will after her death. Upon failure to exercise the power of appointment the deed provided that the trust assets were after her death to pass to her five children in equal shares. By supplemental indenture dated March 16, 1932, the decedent relinquished her power of appointment. On May 19, 1932, she transferred her real estate to one of her daughters who executed declarations of trust therefor for the benefit of the decedent's five children. The Commissioner included the securities and real estate in the decedent's gross estate for tax and assessed a deficiency. The Board of Tax Appeals found that the transfers were made in contemplation of death, sustained the deficiency assessment, and ruled that the trustees were liable as transferees. 38 B. T. A. 1076.

The question for us to determine is whether the Board's ultimate finding or conclusion that the transfers were made by the decedent in contemplation of death was supported by its findings of evidentiary fact. If so the transfers are taxable by virtue of section 302 (a), (c) and (d) of the Revenue Act of 1926, 44 Stat. 9, 70, 71, as amended by Joint Resolution of March 3, 1931, 46 Stat. 1516, 26 U.S.C.A. § 411 (a, c, d).[1] The Board's conclusion is based

[1] "Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

"(a) To the extent of the interest therein of the decedent at the time of his death;

* * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, *including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom*; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Where within two years prior to his death but after the enactment of this Act and without such a consideration the decedent has made a transfer or transfers, by trust or otherwise, of any of his property, or an interest therein, not admitted or shown to have been made in contemplation of or intended to take effect in possession or enjoyment at or after his death, and the value or aggregate value, at the time of such death, of the property or interest so transferred to any one person is in excess of $5,000, then, to the extent of such excess, such transfer or trans-

fers shall be deemed and held to have been made in contemplation of death within the meaning of this title. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death but prior to the enactment of this Act, without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title;

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. The relinquishment of any such power, not admitted or shown to have been in contemplation of the decedent's death made within two years prior to his death but after the enactment of this Act without such a consideration and affecting the interest or interests (whether arising from one or more transfers or the creation of one or more trusts) of any one beneficiary of a value or aggregate value, at the time of such death, in excess of $5,000, then, to the extent of such excess, such relinquishment or relinquishments shall be

solely upon its finding that one of the dominant and controlling motives for the relinquishment of the power of appointment and the transfer of the real estate was the decedent's desire to save her estate the burden of death taxes. This clearly appears from its opinion from which we quote as follows:

"We think there would be no profit in discussing in detail the testimony of the several witnesses who testified at the hearing. Much of their testimony is directed to the fact that Mrs. Denniston was a healthy woman all of her lifetime, with a hopeful and optimistic outlook on life, until within a few weeks of her death, that she was in good health for one of her age at the time she executed the conveyances in question and was not in fear of early death at the time she executed them, and that she had made up her mind that she wanted to complete in her lifetime gifts to her children of all her property, except the life estate in the income from the property which had been transferred by trust indenture on May 19, 1915. All this we accept as true.

"It is also shown, however, by petitioners' own witnesses that, while Mrs. Denniston was in good health at the time she discussed with her lawyers the question of relinquishing the power of appointment and executing the deeds of conveyance of the real estate to her daughter, the burden of the discussion centered around the saving of estate taxes and the avoidance of prospective gift taxes. Most of the discussion with her lawyers seems to have been carried on in Mrs. Denniston's behalf by her two sons-in-law; nevertheless they appear to have been acting in her behalf and she was fully cognizant of what was going on and the motives for executing the conveyances were hers. One of the dominant and controlling motives being the avoidance of estate taxes, it must be held, on the authority of United States v. Wells, supra, and Farmers Loan & Trust Co. v. Bowers, supra, that the relinquishment of the power of appointment executed March 16, 1932, and the conveyances of real estate made May 19, 1932, were executed by decedent in contemplation of death."

■ There was, as the Board points out, substantial evidence to support the finding

that the decedent was motivated by the desire to avoid estate taxes and we must accept it. The petitioners argue that it is not sufficient that one of the dominant and controlling motives is associated with death, but that all the motives which controlled the action must be those which lead to testamentary disposition. This question we need not decide. The question remains, however, whether the fact that a transfer was made to avoid estate tax is, without any other evidence of a motive associated with death, sufficient to support an ultimate finding or conclusion that the transfer was made "in contemplation of death," within the meaning of section 302 of the Revenue Act.

In United States v. Wells, 283 U.S. 102, 115, 117, 119, 51 S.Ct. 446, 451, 75 L.Ed. 867, the Supreme Court, in construing the statutory phrase "contemplation of death," said:

"While the interpretation of the phrase has not been uniform, there has been agreement upon certain fundamental considerations. It is recognized that the reference is not to the general expectation of death which all entertain. It must be a particular concern, giving rise to a definite motive. * * * Death must be 'contemplated,' that it, the motive which induces the transfer must be of the sort which leads to testamentary disposition. As a condition of body and mind that naturally gives rise to the feeling that death is near, that the donor is about to reach the moment of inevitable surrender of ownership, is most likely to prompt such a disposition to those who are deemed to be the proper objects of his bounty, the evidence of the existence or nonexistence of such a condition at the time of the gift is obviously of great importance in determining whether it is made in contemplation of death.

* * *

"There is no escape from the necessity of carefully scrutinizing the circumstances of each case to detect the dominant motive of the donor in the light of his bodily and mental condition, and thus to give effect to the manifest purpose of the statute."

In Colorado Bank v. Comm'r., 305 U.S. 23, 27, 59 S.Ct. 48, 49, 83 L.Ed. 20, the court said: "The mere purpose to make provision for children after a donor's

---

deemed and held to have been made in contemplation of death within the meaning of this title."

We have italicized the language inserted by the Joint Resolution of March 3, 1931.

deatfi is not enough conclusively to establish that action to that end was 'in contemplation of death.' Broadly speaking, thoughtful men habitually act with regard to ultimate death but something more than this is required in order to show that a conveyance comes within the ambit of the statute."

We think that because in carrying out a plan to provide for her children the donor uses a method which she thinks is best calculated to save death taxes the conveyance is not thereby conclusively stamped as "in contemplation of death." The desire to avoid estate taxes may be just as clearly present in the mind of a young and vigorous donor who thinks of death as far distant as in that of one who is old and feeble and who looks momentarily for its coming. Standing alone it cannot be deemed conclusive of a mental state such as is contemplated by the statutory phrase "contemplation of death."

In Farmers' Loan & Trust Co. v. Bowers, 2 Cir., 98 F.2d 794, and Oliver v. Bell, 3 Cir., 103 F.2d 760, there was evidence in addition to the motive of saving death taxes upon which the conclusion was reached that the controlling motive for the transfer was a particular concern for impending death. In each of those cases the donor was in ill health, whereas the Board in the instant case found as a fact that the decedent was "in reasonably good health for one of her age at the time the conveyances in question were executed."

We think that the petitioners adequately overcame the presumption in favor of the Commissioner's ruling by the uncontradicted evidence that the policy of the deceased was to divide her estate equally among her children as is shown by the trust deed executed by her nineteen years prior to her death; that at the time of the 1932 transfers she was a vigorous, robust woman with better than average health for one of her age; and that she was planning her activities for the future without any fear of failing health or impending death.

In Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772, the Supreme Court held unconstitutional those provisions of paragraphs (c) and (d) of Sec. 302 of the Revenue Act of 1926 which established a conclusive presumption that transfers and relinquishments taking place within two years of death were in contemplation thereof. On June 6, 1932, the Congress amended Sec. 302, 26 U.S.C.A. § 411, to substitute a rebuttable presumption. The transactions here involved took place in March and May, 1932. Consequently there is not the statutory presumption in the case which exists in those cases involving transactions taking place after June 6, 1932. Nor can the amendment made by the Joint Resolution of March 3, 1931, apply to this case since the transfer under which the decedent reserved her life estate and power of appointment was made in 1915 long before the passage of the joint resolution, the operation of which was prospective only. Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858.

The decisions of the Board of Tax Appeals are reversed.