## COMMISSIONER OF INTERNAL REVENUE v. BECK'S ESTATE et al.

### No. 302.

Circuit Court of Appeals, Second Circuit.

June 24, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Samuel H. Levy, Sp. Assts. to Atty. Gen., for petitioner.

Cook, Nathan, Lehman & Greenman, of New York City (Ben Herzberg, of New York City, of counsel), for respondents.

Before SWAN, CHASE, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

The Gift Tax Act of 1932, §§ 501(a) and (b) and 506, 26 U.S.C.A. Int.Rev.Acts, pages 580, 588, imposes a tax on "the transfer * * * of property by gift * * * whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible * * *"; and provides that "if the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." The Senate and House Reports relating to that Act stated: "The terms 'property,' 'transfer,' 'gift,' and 'indirectly' [in § 501] are used in the broadest and most comprehensive sense; the term 'property' reaching every species of right or interest protected by law and having an exchangeable value."[1] No language can be imagined which would more plainly subject the trust here to the gift tax. Cf. Commissioner v. Marshall, 2 Cir., 125 F.2d 943, 945.

Respondents, however, refer to § 167(a) (3) of the income tax provisions of the Revenue Act of 1934 which provides that "where any part of the income of a trust * * * is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor * * * then such part of the income of the trust shall be included in computing the net income of the grantor." Under that provision, that part of the income of the trust used to pay the annual premiums on the policies during the grantor's life was taxable to him as his income. There was thus an overlapping of gift and income taxes. It is "unbearably inconsistent," respondents argue, to tax the value of that income as a gift from the grantor in 1935 and thereafter to tax those payments as his income. Therefore it is asserted, Congress must have intended to exempt from gift tax the commuted value, according to the actuarial tables, of the income on which the grantor would have to pay income tax.

Respondents do not contend that the gift tax provisions, if interpreted so as to authorize such an overlapping, are unconstitutional. They thus concede, in effect, that Congress had the power to enact a

---

[1] Senate Report 665, 72d Cong., 1st sess., p. 39; House Report 708, 72d Cong., 1st sess., p. 27.

statute having the consequences they find objectionable. The sole question, then, is what Congress intended. As bearing on the Congressional intent, respondents stress the fact that the pertinent sections of the gift tax law and § 167(a) (3) of the income tax law were "originally enacted in 1924 as part of the same Revenue Act." But that very fact defeats respondents' contention that the provisions were not intended to overlap. For Congress knows —who would not?—how to prevent such double taxation. A short sentence would have done the trick. The familiar "easy-to-say-so-if-that-is-what-was-meant" rule of statutory interpretation[2] has full force here. The silence of Congress is strident.

Judicial legislation is one of the facts of life, an inescapable and necessary one.[3] But courts may not, as legislatures may, roam at large, confined only by the Constitution; their function, when dealing with legislative legislation, does not go beyond that of filling in small gaps left by the legislature—and to closing those gaps in accordance with what appears to have been the legislative purpose.[4]

---

[2] See, e. g., Farrington v. Tennessee, 95 U.S. 679, 689, 24 L.Ed. 558; Union National Bank v. Matthews, 98 U.S. 621, 627, 25 L.Ed. 188; Baltimore & P. R. R. Co. v. Grant, 98 U.S. 398, 403, 25 L. Ed. 231; Vicksburg, S. & P. R. R. Co. v. Dennis, 116 U.S. 665, 670, 6 S.Ct. 625, 29 L.Ed. 770; United States v. Chase, 135 U.S. 255, 259, 10 S.Ct. 756, 34 L. Ed. 117; United States v. Koch, C.C., 40 F. 250, 252, 5 L.R.A. 130; Harrington v. Herrick, 9 Cir., 64 F. 468, 471; Central Real Estate Co. v. Commissioner, 5 Cir., 47 F.2d 1036, 1037.

[3] Holmes, J., in Southern Pacific Co. v. Jensen, 244 U.S. 205, 218, 221, 37 S.Ct. 524, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas.1917E, 900. Cf. Gray, The Nature and Sources of Law (1900) §§ 222; Thayer, loc. cit., 318, 319, 327, 331; Dicey, Law and Opinion in England (2d ed. 1914) 361–398, 483–484; Cardozo, The Nature of the Judicial Process (1921) 103, 113, 146–149; M. R. Cohen, The Process of Judicial Legislation, reprinted in Law and The Social Order (1935) 112; Dickinson, Administrative Justice and The Supremacy of Law (1922) 122 note 22, 200 note 23; Clark, The Function of Law in a Democratic Society, 9 Un. of Chi.L.Rev. 393 (1942); In re Barnett, 2 Cir., 124 F.2d 1005; 1 Paul, Federal Estate and Gift Taxation (1942) 43–44 and notes; 62, 86–87 and notes 33 and 34.

[4] No one was more aware than Mr. Justice Holmes that judicial legislation is unavoidable. See, e. g., Holmes, The Common Law (1881) 1, 5; Holmes, Common Carriers in The Common Law, 13 Am.L.Rev. 609 (1879); reprinted in Shriver, Holmes, Book Notices, etc. (1936), 9, 10; Holmes, The Path of The Law, 10 Harv.L.Rev. 457 (1897) reprinted in Holmes, Collected Legal Papers (1920) 166, 181. His statement in Johnson v. United States, 1 Cir., 1908, 163 F. 30, 32, 18 L.R.A.,N.S., 1194, as to the duty of judges to carrying out a legislative policy ineptly expressed in a statute, has become classic. See United States v. Hutcheson, 312 U.S. 219, 235, 61 S.Ct. 463, 85 L.Ed. 788; Keifer and Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 391 note 4, 59 S.Ct. 516, 83 L.Ed. 784; Van Beeck v. Sabine Towing Co., 300 U.S. 342, 351, 57 S.Ct. 452, 81 L.Ed. 685 (cf. Aristotle, Rhetoric, Bk. I., Ch. 13, 1374b, 10–12).

But he knew the limits of judicial legislation. In Southern Pacific v. Jensen, supra [244 U.S. 205, 37 S.Ct. 531, 61 L.Ed. 1086, L.R.A.1918C, 451, Ann.Cas. 1917E, 900], he said, "I recognize without hesitation that judges do and must legislate, but they can do so only interstitially * * *. A common-law judge could not say, 'I think the doctrine of consideration a bit of historical nonsense and shall not enforce it in my court.' "

That, sometimes, the "legislative intention" on which courts rely in construing statutes is something of a fiction was well stated by John Chipman Gray, The Nature and Sources of Law (2d ed. § 370): "The fact is that the difficulties of so-called interpretation arise when the Legislature has had no meaning at all; when the question which is raised on the statute never occurred to it; when what the judges have to do is, not to determine what the legislature did mean on a point which was present to its mind, but to guess what it would have intended on a point not present to its mind had the point been present." Much the same comment had been made by Aristotle; speaking of the need (by what we now call interpretation) to supplement a "community's written code of law," he wrote that "its existence partly is and partly is not intended by legislators; not intended, where they noticed no defect in the law; intended, where they find themselves unable to define things exactly. * * *" Rhetoric, Bk. 1, Ch. 13, 1374a, 25–35. Cf. Aristotle, Nicomachea Ethics (Ross transl.) Bk. 5, Ch. 10, 1137b, 10–24; Aristotle, Politics, Bk. 3, Ch. 16, 1287a, 24–29, 15–18; 1287b. Kiss,

Respondents ask us to engage in a far bolder undertaking—to ignore not only the legislative language but also the legislative intention, and to amend these statutes, in order to achieve what we might regard as a more just result. Respondents' able counsel offers alternative suggestions for such judicial amendments.[5] Such a re-making of the legislation would require consideration of questions of legislative policy bearing on fiscal and economic matters and on administrative convenience; to discharge that task efficiently we would be obliged to hold a sort of Congressional Committee hearing, at which all interested persons would be heard, so as to be sure that our amendments would not entail unforeseen and undesirable results.[6] We have no power to embark on such an enterprise.

■ Judge Magruder, with his usual felicity, has recently shown in detail that there was no Congressional intention completely to integrate the income, gift and estate taxes. See Higgins v. Commissioner, 1 Cir., June 2, 1942, 129 F.2d 237. There is no need to add to his illuminating discussion. See, also, Commissioner v. Prouty, 1 Cir., 115 F.2d 331, 133 A.L.R. 977; Commissioner v. Marshall, 2 Cir., 125 F.2d 943, 947, 948; Herzog v. Commissioner, 2 Cir., 116 F.2d 591, 595, 596; Commissioner v. Krebs, 3 Cir., 90 F.2d 880; Commissioner v. Robinette, 3 Cir., 129 F.2d 832. Paul, our most eminent "tax law" commentator, has criticized the Board's decision in the instant case, concluding his comments thus:

"It seems more reasonable to hold that Congress attributed the ownership of income from a funded insurance trust to the grantor for a specific purpose and indicated no intention of extending this treatment to the gift tax."[7]

At the bottom of respondents' contentions is this implied assumption: The same transaction cannot be a completed gift for one purpose and an incomplete gift for another. Of course, that is not true, as the cases above cited make clear. Perhaps to assuage the feelings and aid the understanding of affected taxpayers, Congress might use different symbols to describe the taxable conduct in the several statutes, calling it a "gift" in the gift tax law, a "gaft" in the income tax law, and a "geft" in the estate tax law.

The Commissioner, in his brief, observes that apparently, under existing decisions, the corpus of the trust is not subject to the estate tax and adds that, if we were to sustain the Board here, he would seek a re-examination of those decisions. Respondents state, in effect, that, if the Commissioner will abide by what they consider an implied promise in that statement not to ask for a modification as to them of those decisions, they will be content to have us sustain the Commissioner's contention here. Of course, we have no power to enforce such an implied promise, given without legal consideration, but, as respondents request, we note it.

The order of the Board of Tax Appeals is reversed.

---

Equity and Law, in The Science of Legal Method (transl. 1921) 146, 159; Wurzel, Methods of Juridical Thinking, in the same volume, 286, 321–323, 350–356; Cohen, loc. cit. 131–134; 2 Paul, Federal Estate and Gift Taxation (1942) 994.

There are those who suggest that a court, when it "finds" the "facts" of a case, on the basis of conflicting evidence, is, so far as the parties to that case are concerned, "making law" or judicially legislating, since the decision in that case turns not on what may be the actual facts but on the "facts" as "found," and since that decision is "the law" for those parties. Cf. Chief Justice Hughes, Address before Fed. Bar Ass'n., quoted in N. Y. Times, Feb. 13, 1931, p. 18; Bell, Let Me Find The Facts, 26 A.B.A.J. 552 (1940); Holmes, The Path of the Law, 10 Harv.L.Rev. 457 (1897), reprinted in Holmes, Collected Legal Papers (1920) 167, 171–172; Holmes, Book Notice, 6 Am.L.Rev. 723 (1872), reprinted in Shriv-er, Holmes, Book Notices, etc. (1936) 21, 25–26; Radin, Law as Logic and Experience (1940) 62ff; Wurzel, loc. cit., 398, 400, 419; Tourtoulon, Philosophy in The Development of Law (transl. 1918) 550–551; Aristotle, Rhetoric, Bk. 1, Ch. 1, 1354b, 5–15; United States v. Forness, 2 Cir., 125 F.2d 928, 942.

[5] His "solutions" are (assuming always that the income is taxable to the grantor): (1) gift tax upon entire corpus without deduction of commuted value of income taxed to grantor, but no estate tax on that commuted value, (2) gift tax computed with such a deduction, but estate tax upon amount deducted, and (3) gift tax computed with deduction, coupled with annual gift tax on income, but no estate tax on commuted value.

[6] Consider, for instance, the problem of adjusting the rates of tax under the several statutes.

[7] 2 Paul, Federal Estate and Gift Taxation (1942) § 17.19; see also § 17.17.