Warren P. SMITH and the Bank of New York, as Executors Under the Last Will and Testament of Clara L. Westinghouse MILLER, Deceased,

v.

UNITED STATES.

No. 357-54.

United States Court of Claims.

Jan. 31, 1956.

Mason G. Kassel, New York City, for plaintiff. Harry J. Rudick and Lord, Day & Lord, New York City, were on the briefs.

David R. Frazer, Detroit, Mich., with whom was Asst. Atty. Gen. H. Brian Holland, for the defendant. Elizabeth B. Davis and Andrew D. Sharpe, Washington, D. C., were on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

The plaintiffs sue to recover estate taxes in the amount of $221,047.53. The primary issue presented is whether the decedent transferred the property in question prior to March 4, 1931, within the meaning of section 811(c) of the Internal Revenue Code of 1939, 26 U.S.C. § 811(c), as amended by the Technical Changes Act of 1949, § 7(a, b), 63 Stat. 895, 896, as amended by the Revenue Act of 1951, 65 Stat. 567, 26 U.S.C. § 811 note.

The facts have been stipulated and those concerning the primary issue may be summarized as follows: The decedent, Clara L. Westinghouse Miller, died on January 22, 1950, and the plaintiffs duly qualified as executors under her will. On October 1, 1923, the decedent as grantor and her then husband, H. Herman Westinghouse, and the Fifth Avenue Bank of New York, as trustees, executed a trust agreement under which the decedent reserved the income for her life with remainders over. The trust agreement provided that the trust could not be revoked, terminated or modified except that (1) during the life of the grantor and while H. Herman Westinghouse was a trustee, he, in his sole discretion, could effect a complete revocation and termination of the trust, and (2) at any time during the life of the grantor and while H. Herman Westinghouse was a trustee, the trust could be revoked, terminated or modified through an appropriate instrument in writing executed by the grantor and H. Herman Westinghouse.

The trust agreement also provided that the trustees, in the event that the income from the trust in any year was less than $20,000, should use such part of the principal as might be necessary to make the net annual yield to the grantor at least such amount above any and all taxes payable with respect thereto. On July 19, 1929, this provision was amended to provide for a minimum annual payment of $40,000. The value of the corpus at that time was $1,163,572.73. There were no further significant amendments to the trust.

H. Herman Westinghouse died in November 1933, and the trust became completely irrevocable at that time. The decedent retained her life estate in the income until her death in 1950.

The plaintiffs filed a Federal estate tax return for the estate of decedent on April 3, 1951, and paid the tax due as shown by the return, $254,518.08. The value of the trust property, $742,599.46, was included in the gross estate as sub-ject to the estate tax. A timely claim for refund was filed, rejected, and this suit followed.

The defendant concedes that the transfer was not made in contemplation of death and that section 811(c) (2), dealing with reversionary interests, has no application.

The pertinent part of section 811(c), as amended, provides:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property * * *
* * * * * *

"(1) * * * To the extent of any interest therein of which the decedent has at any time made a transfer * * * by trust or otherwise—
* * * * * *

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom * * *.
* * * * * *

"The provisions of section 811(c) (1) (B) of such code shall not, in the case of a decedent dying prior to January 1, 1951, apply to— .

"(1) a transfer made prior to March 4, 1931; * * *."

The plaintiffs contend that the transfer in trust in 1923 with the power in the trustee to revoke in his sole discretion and the reservation in the decedent of the power to revoke, terminate or modify in conjunction with the trustee was a transfer made before March 4, 1931, within the meaning of the above-quoted clause that section 811(c) (1) (B) shall not apply to "a transfer made prior to March 4, 1931." The plaintiffs

contend that the statutory language of section 811(c) and its legislative history indicate that the phrase "transfer made prior to March 4, 1931" refers to the date on which the property was actually transferred, regardless of whether the transfer was revocable or irrevocable at that time. The plaintiffs also contend that the Technical Changes Act of 1949, supra, entitles them to recover because that Act was designed to give relief to those who relied on the May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, rule and did not release their life estates.

The defendant contends that a transfer within the meaning of section 811(c) did not take place until the trust became irrevocable, which was in 1933 when the trustee died. The defendant relies on rules of transfer established by Burnet v. Guggenheim, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748, and Estate of Sanford v. Commissioner, 308 U.S. 39, 60 S. Ct. 51, 84 L.Ed. 20, gift tax cases, and points out that the gift tax and estate tax are *in pari materia* and should be construed together.

Congress, in the Technical Changes Act of 1949, intended to honor the expectations of those who had arranged, or had refrained from rearranging their property affairs in reliance upon interpretations placed upon certain earlier statutes by the Supreme Court of the United States, particularly in the decision in May v. Heiner, 281 U.S. 238, 50 S.Ct. 286, 74 L.Ed. 826, made in 1930. It therefore becomes pertinent to see what was decided in that case.

Section 302(c) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Acts, page 227, required the inclusion in one's estate, for estate tax purposes, property of which he had made a transfer "intended to take effect in possession or enjoyment at or after his death." In May v. Heiner the Supreme Court held that property which the decedent had conveyed irrevocably, but in which he had retained a life interest, was not taxable to his estate. This decision reversed the interpretation which the taxing authorities had placed upon the statute. On March 2, 1931, three *per curiam* decisions to the same effect as May v. Heiner were issued by the Supreme Court. Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412; Morsman v. Burnet, 283 U. S. 783, 51 S.Ct. 343, 75 L.Ed. 1412; McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413. The reaction of Congress was immediate and vigorous. On the next day Congress passed a Joint Resolution, 46 Stat. 1516, saying flatly that property transferred, but with a life estate reserved to the donor, was taxable to his estate. Congress did not make the amendment retroactive, and the Supreme Court held that it was not retroactive "in respect of past irrevocable transfers with reservation of a life interest." Hassett v. Welch, 303 U.S. 303, 307, 58 S.Ct. 559, 562, 82 L.Ed. 858.

What was then the status of the property of the decedent in the instant case? She had, in 1923, conveyed it in trust to her husband and another, reserving to herself a life estate, and reserving to her husband alone, or to her husband and herself, so long as he was a trustee, the power to completely revoke and terminate the trust. Our question, as the plaintiffs pose it and as we see it, is whether the decedent's legal and tax advisers would have thought, and would have assured her, that the property which she had conveyed in trust would be free of estate tax, because of the Supreme Court's decision in May v. Heiner.

It seems to us unthinkable that competent legal or tax advisers would have given the decedent any such assurance. The decision in May v. Heiner, on its own simple facts, came close to contradicting the language of the statute as it then read. Congress was so dissatisfied with the decision, even as to the simple facts involved in it, that it immediately amended the law, for the future. But the important fact in the mind of a legal or tax adviser would have been that the Supreme Court had not decided, in May v. Heiner, that any kind of a transfer, reserving a life estate, would remove the property from the transferor's taxa-

ble estate. It had only decided that an irrevocable transfer, finally fixing the present and future rights of the grantor-life-tenant and the remaindermen, would accomplish that result.

No one could have contended, for example, that May v. Heiner would have applied to a case in which the grantor had reserved a life estate and, in addition, a power to revoke the entire transaction. The Supreme Court had decided that question in Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410. The rationale of May v. Heiner was that the rights of the remaindermen had been irrevocably fixed by the transfer, and the grantor had none of the powers ordinarily possessed by an owner of property at the time of his death. In the instant case the conveyance was by no means irrevocable. It was completely revocable by the decedent's husband, who was one of the trustees, or by herself and her husband. The remaindermen named in the conveyance were by no means certain that the property would ever come to them under the conveyance. The Supreme Court had held, in one of the three *per curiam* opinions issued on March 2, 1931, that May v. Heiner was applicable where the grantor had reserved a life estate and a power to revoke in conjunction with one of the beneficiaries. In the instant case, the husband of the settlor, who had the power to revoke, had only an extremely remote beneficial interest in the trust.

We have, then, a situation in which, up to the time of the death of the decedent's husband in 1933, the only prerequisite to the decedent's recovery of her property and her further disposition of it as she pleased, was the obtaining of the consent of her husband, who had no adverse interest of any consequence which would have caused him to withhold his consent. There is no decision of the Supreme Court, before or after May v. Heiner, on which anyone could have relied in concluding that the property transferred by the decedent would escape the estate tax.

The law, then, went along on the basis of May v. Heiner as to pre-1931 transactions, and on the basis of the 1931 Joint Resolution as to post-1931 transactions, until the Supreme Court's decision in 1949 in Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 337, 93 L.Ed. 288. In that case the Supreme Court overruled May v. Heiner. That meant that even in the simple case of a life estate and an irrevocable remainder, the law was that the property was subject to the estate tax. That meant that persons who had relied upon May v. Heiner as approving the status of their pre-1931 settlements, and had therefore refrained from rearranging their affairs to comply with the post-1931 law would be disappointed in their expectations. Congress set about to provide that they should not be so disappointed, and enacted section 7 of the Technical Changes Act of 1949, which provided that subsection (c) (1) (B) of section 811 of the Internal Revenue Code of 1939 should not apply to "a transfer made prior to March 4, 1931." That meant that the amendment which had been embodied in the Joint Resolution of March 3, 1931, making even an irrevocable remainder following a life estate subject to the tax, should still not apply to pre-1931 transactions.

Congress made plain what it intended to accomplish by section 7 of the Technical Changes Act of 1949. In Report No. 831, Senate Finance Committee, 81st Cong. 1st sess. pp. 7, 8, appears the following language:

"In the joint resolution of March 3, 1931, Congress created a new estate tax rule with respect to transfers after March 3. It left unchanged the rule in effect for transfers before that date. It is the opinion of your committee that the old rule should have been continued in effect with respect to such transfers until changed by legislation. Since the rule has been changed by the Supreme Court in the Church opinion, your committee believes

that the Congress should act to restore the estate tax law to what it was prior to the Church opinion.

"Some persons might have surrendered their life estates after 1931 had they not relied on the interpretations of the estate tax law which has now been overruled and in some cases considerable hardship may result from application of the new interpretation presented in the Church case. It is the opinion of your committee that after all of these years these persons are entitled to rely upon the long standing interpretation in May v. Heiner, and the proposed amendment is accordingly intended to assure that result. * * * "

From the quoted language it is obvious that Congress meant to restore to pre-1931 transactions the tax status which they had from the time of the decision in May v. Heiner in 1930 to that of the decision in Estate of Church, in 1949. But that Congress did not intend to exempt from taxation property which had never before been exempt, is equally obvious. Section 7 was a relief measure, but the relief which it gave was relief from disappointment of the expectations of persons who had arranged their affairs in reliance upon a Supreme Court decision.

In the briefs of the parties, there is much discussion of the meaning of the word "transfer" as used in section 7. The plaintiffs urge that it means any transaction which passes title. If it means that, it does not accomplish what Congress intended. May v. Heiner did not hold that every transaction which had the effect of passing title out of the grantor accomplished an avoidance of estate taxes. In Reinecke v. Northern Trust Co., supra, the Supreme Court had held in 1929 that a conveyance under which the grantor had reserved a life estate and a power of revocation in himself did not prevent the taxation of the property to his estate. But as the plaintiffs would have us inter-

pret the word transfer, if a similar case arose after 1949, in which the conveyance had been made before 1931, the court would be obliged to hold the property exempt, though no one could possibly, before 1949, have thought it exempt under May v. Heiner or otherwise.

There are adequate precedents for giving to the word "transfer" as used in section 7 a meaning which is consistent with the intent of Congress, and which does not turn this legislation into an extensive unintended grant of immunity from taxation. This court in Means v. United States, 39 F.2d 748, 69 Ct.Cl. 539, held that a " 'transfer by gift' " took place, not when the conveyance of the title occurred, but when the donor cancelled and surrendered the power of revocation reserved in the conveyance. The court said, 39 F.2d at page 753, 69 Ct. Cl. at page 548:

"It was the freeing of the property transferred from the possibility of the exercise of the rights of revocation that effected the transfer and subjected the corpus of the gifts to the taxes imposed on such transfers."

In Estate of Sanford v. Commissioner, supra, the court had for interpretation the statute imposing a tax upon "the transfer * * * of property by gift". The conveyance in question was made before the enactment of the statute, but it contained a power of revocation which power was not relinquished until after the enactment. The court, through Mr. Justice Stone, held that the "transfer" contemplated by the statute occurred, not when the title passed, but when the title became irrevocable. The court said, 308 U.S. at page 42, 60 S.Ct. at page 55:

"When the gift tax was enacted Congress was aware that the essence of a transfer is the passage of control over the economic benefits of property rather than any technical changes in its title. * * * Since it was the relinquishment of the power which was taxed as a trans-

fer and not the transfer in trust, the statute was not retroactively applied."

In Burnet v. Guggenheim, supra, the court's opinion, delivered by Mr. Justice Cardozo, treated the question similarly.

The fact that the cases which have interpreted the word "transfer" happen to have been gift tax cases and not estate tax cases is irrelevant. What the precedents prove is that the word "transfer" like most other words in our language will, when used in a statute, bear an interpretation which accomplishes rather than frustrates the intention of Congress.

■ We conclude that the trust property here in question was not relieved from estate taxes by section 7 of the Technical Changes Act of 1949. We therefore find it unnecessary to consider the Government's alternative contention.

The plaintiffs' petition will be dismissed. It is so ordered.

JONES, Chief Judge, and WHITAKER, Judge, concur.

LARAMORE, Judge (dissenting).

I am unable to agree with the majority opinion. The majority opinion ignores (1) the plaintiffs' primary contention based on the statutory use of the word transfer in estate tax law; (2) the usual approach of determining estate tax consequences at the date of decedent's death rather than at the time of the transfer, except for transfers made in contemplation of death; and (3) the fact that the only effective power to revoke was vested in the trustee and was extinguished long before decedent's death. Further, it fails to cite any authority for assuming that Congress meant, when it used the phrase "transfer made prior to March 4, 1931", that the transfer must have been completely irrevocable on March 4, 1931, rather than a transfer of property as that term is ordinarily understood and used in the rest of the estate tax provisions. I also believe that the reliance of the majority opinion on the gift tax cases is ill-founded.

First, I believe it should be pointed out that the definition of transfer contained in the gift tax cases is not controlling or even relevant to the consideration of the issue in this case. The estate and gift taxes are *in pari materia* in that they are closely related, and the gift tax serves to supplement the estate tax. However, this does not mean that a term used in both laws has the same meaning. A transfer considered complete for gift tax purposes may or may not be considered complete for estate tax purposes, Smith v. Shaughnessy, 318 U.S. 176, 63 S.Ct. 545, 87 L.Ed. 690, or income tax purposes, Commissioner of Internal Revenue v. Beck's Estate, 2 Cir., 129 F.2d 243, and the cases there cited. A sufficient example for present purposes is a transfer of property in trust before March 4, 1931, with a reservation of the right to designate the persons who shall possess or enjoy the property or the income therefrom. The reserved power makes the transfer incomplete for gift tax purposes but nevertheless the property is not included in the gross estate since the transfer was made prior to March 4, 1931.

The word transfer does not play as important a role in the estate tax law as it does in the gift tax law. Under the statutory scheme of the estate tax sections, emphasis is placed on the rights, powers, and interests of decedent in property at the date of his death, on dispositions made in contemplation of death, and dispositions intended to take effect in possession and enjoyment at or after death. Property is included in the gross estate notwithstanding its actual legal transfer to someone else. This is accomplished by express subsections, paragraphs and subparagraphs. Attention, under the present law, is directed to determining whether the transfer falls within one of these provisions and not on the "completeness" of the transfer.

It appears that the statutory use of the word transfer throughout section

811, aside from its use designating time of transfer such as its use in the phrase here in controversy, has reference to the actual transfer of the property as it is ordinarily understood, the conveyance of legal title. See for example section 811 (d) which taxes a *transfer* that is revocable at date of death.

The question thus shaped is whether Congress intended to use the word transfer in its ordinary sense when used in reference to *time* of transfer such as its use in the phrase here in controversy, "transfer made prior to March 4, 1931", or whether Congress intended to use it in the sense of a completed irrevocable transfer that would not have subjected the property to inclusion in the gross estate under the revocable transfer section 811(d), its predecessors or the rule of Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, if the decedent had died on March 4, 1931.

We agree with the plaintiffs that identical words in different parts of the same statute, here the same section and subsection, should be construed to mean the same thing, unless a contrary legislative intent is clearly shown. See Helvering v. Stockholms Enskilda Bank, 293 U.S. 84, 55 S.Ct. 50, 79 L.Ed. 211, and United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 236, 75 S.Ct. 733, 99 L.Ed. 1024, which amply support this proposition.

The legislative history and purpose of the Technical Changes Act of 1949 leads me to believe that Congress intended the word transfer in the phrase here in controversy to mean the actual transfer of the property regardless of the interest retained by the transferor at the time of the transfer. Reference in the congressional debates was always to the date that the property was transferred in trust and to the date of creation of the trust and the interest retained at date of death. See the Senate debate on amendments to the bill and clarification of language used in the S. Rept. 831, 81st Cong., 1st sess.; 95 Cong.Rec. 12990–12994 (1949). See also the Conference Report, H. Rept. 1412, 81st Cong., 1st sess., and the Statement of the Managers on the part of the House, 96 Cong.Rec. 14444–14446 (1949). The majority can find no support in the statute, legislative history, or case law for its conclusion that a trust created prior to March 4, 1931, must be irrevocable in order to be a transfer before March 4, 1931. I see no need to impose such a requirement where Congress has not seen fit to do so.

It also may be noted that section 8 of the Technical Changes Act of 1949, 26 U.S.C.A. § 811 note, supra, permitted the release without the payment of a gift tax of certain life estates and income interest retained in property transferred prior to June 7, 1932, if the release was made in 1949 or 1950. This section also provided that the release of such interest, if made before 1951, would not be considered made in contemplation of death. This section did not apply "if the property transferred would have been includible in the grantor's gross estate under section 811(d) [power of revocation section] of the Internal Revenue Code (1939) had he died on October 7, 1949." This proviso indicates that Congress was aware of the fact that a transfer made before March 4, 1931, may have been revocable. What did Congress do? It did not say that the property is automatically included in the gross estate because the transfer was revocable on March 4, 1931. Rather, it provided that if the transfer was still revocable on October 7, 1949, the release of the power of revocation would be subject to a gift tax and *may* be considered made in contemplation of death. Thus, if the power was released and was not released in contemplation of death, and no other ground existed for inclusion, the property would clearly be excluded from the gross estate. This proviso has no meaning under the majority opinion, because the property could be included in the gross estate regardless of whether the power was released in contemplation of death.

I believe that the decedent falls within one of the purposes of this act, which

was designed, *inter alia*, to give relief to those taxpayers who relied on May v. Heiner, supra, and did not release their life estates. The trust in question was created in 1923. Section 302(d) of the Revenue Act of 1924, 43 Stat. 253, 304, 26 U.S.C.A. Int.Rev.Acts, page 67, for the first time specifically provided that a transfer under which the settlor had the power either alone or in conjunction with any person to alter, amend, or revoke would result in the property being included in his gross estate. This provision was not retroactive. Cf. Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62; Helvering v. Helmholz, 296 U.S. 93, 56 S. Ct. 68, 80 L.Ed. 76; White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80.

The Supreme Court decided Reinecke v. Northern Trust Co., supra, in 1929. In that case the Court held a transfer under which the settlor retained a life estate and an absolute power to revoke until the date of his death was taxable as one intended to take effect in possession or enjoyment at or after death, and and that the Revenue Act of 1921, 42 Stat. 227, was not retroactively applied because the transfer was incomplete since the settlor reserved the sole power to revoke until his death, which was after the passage of the act. That case also involved five other trusts wherein the settlor gave a life estate to the beneficiaries with remainders over at or after settlor's death. In four of the trusts he reserved the power to revoke in conjunction with the individual beneficiary of each of the four trusts. In the fifth trust he reserved the power to revoke in conjunction with a majority of the beneficiaries. The Court held as to these five trusts that since the power to revoke was dependent on the consent of the one or ones having beneficial and therefore adverse interest, the trusts had passed from his control and were complete. The Court stated that the clause "to take effect in possession or enjoyment at or after death" did not include property or interest therein unless such property or interest passed from the possession or enjoyment or control of the donor at his death. This laid the ground work for the May v. Heiner, supra, decision.

The Supreme Court decided May v. Heiner, supra, in 1930. In that case the settlor had transferred property in trust under which the income was payable to her husband during his life and upon his decease to herself for life with remainder over to her children. The trust was irrevocable at time of transfer and date of death. The Court held that the retention of a contingent life estate until the date of death did not result in the inclusion of the corpus in her gross estate under section 402(c) of the Revenue Act of 1918, 40 Stat. 1057, because title to the property was fixed by the trust deed and passed under that deed and therefore did not pass from her possession at her death.

On March 2, 1931, the Supreme Court rendered three *Per Curiam* opinions affirming May v. Heiner, supra. Two of the cases, Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412, and Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412, involved irrevocable trusts where the settlor retained an immediate life estate. The third case, McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413, involved a trust where the settlor retained until the date of his death an immediate life estate and a power to revoke in conjunction with one of the beneficiaries.

On March 3, 1931, Congress passed a Joint Resolution, 46 Stat. 1516, amending section 302(c) of the Revenue Act of 1926, 44 Stat. 9, 70, to include in the gross estate " * * * a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property * * *." This amendment was prospective only. 71st Cong., 3d sess., 74 Cong.Rec. 7199 (1931). The Supreme Court held that it was not retroactive "in respect of past irrevocable transfers with reservation of a life inter-

est." Hassett v. Welch, 303 U.S. 303, 307, 58 S.Ct. 559, 562, 82 L.Ed. 858.

Thus it is seen from the above-cited cases that at or about the time of the passage of the 1931 Joint Resolution a transfer subject to the absolute power in the settlor to revoke was considered an incomplete transfer for estate tax purposes. It is also seen that a transfer made before 1924 subject to a power to revoke in conjunction with a beneficiary, a person having an adverse interest, was considered complete for estate tax purposes. In the instant case the trustee who had the power to revoke had a beneficial interest in the trust although it was remote. Also, in order to be taxable under "possession and enjoyment" clause the interest had to pass from decedent's possession or enjoyment at his death, thus giving emphasis to transfer of legal title before death.

The trustee had the sole power to revoke, and the decedent's power to revoke, terminate, or modify in conjunction with the trustee, was superfluous. Cf. Helvering v. Helmholz, supra. In Commissioner of Internal Revenue v. Irving Trust Co., 2 Cir., 147 F.2d 946, decided in 1945, the trustee, who did not have an adverse interest, had the power in its sole unrestricted discretion to return the corpus of trusts created prior to March 1, 1931, to the settlor. The settlor reserved a life interest in part of the income. The court held that the transfer was governed by pre-1931 law and that since the settlor could not enforce the return of any of the corpus it was not includible in his gross estate. In Denniston v. Commissioner, 3 Cir., 106 F.2d 925, decided in 1939, the decedent had reserved a life estate and a power of appointment by will in a pre-1931 trust. The power of appointment was released in 1932. The court held the pre-1931 law applicable since the transfer in trust under which decedent reserved her life estate and power of appointment was before March 4, 1931.

Thus is it seen that there would be considerable doubt as to whether the corpus of the trust in the instant case would have been included in decedent's gross estate had she died on March 4, 1931.

There is no indication in the Technical Changes Act of 1949 or its history to indicate that Congress intended to affix a different meaning to the word transfer than its ordinary meaning. Had Congress intended to restrict the relief of this act to irrevocable transfers made prior to March 4, 1931, I believe that they would have specifically done so and furnished some guide as to how irrevocable a transfer had to be. On the contrary, Congress reinstated the May v. Heiner rule with respect to trusts created prior to March 4, 1931. That is, decedents dying possessed of a life estate in property transferred prior to March 4, 1931, should not have the property included in their gross estate unless the property is otherwise includible. At the date of decedent's death and for 17 years before that time, she only had a life estate and the right to have the corpus invaded to provide a minimum income of $40,000 a year. This interest was insufficient to include the entire corpus in the gross estate.

It seems to me that decedent could have reasonably relied on May v. Heiner and did not release her life estate because of that decision. Since 1933, and at the date of her death, she only possessed a life estate in property transferred prior to March 4, 1931. This falls squarely within the May v. Heiner decision. The majority seems to find comfort in the fact that the trust in May v. Heiner was irrevocable when created. This, of course, is irrevelant. The trust could have been completely revocable on creation. The important fact is that it was irrevocable at the time of decedent's death as was the trust in the instant case.

The defendant's alternative contention with respect to the inclusion of $280,-563.61 of the corpus in the gross estate because of the decedent's right to a minimum annual yield of $40,000 is without merit. See Blakeslee v. Smith, D.C., 26

F.Supp. 28, affirmed, 2 Cir., 110 F.2d 364; Brown v. Routzahn, 6 Cir., 63 F.2d 914; Estate of Eleanor Hughes Beggs v. Commissioner, 13 T.C. 131. The value as of decedent's death of her right to a minimum annual yield of $40,000, computed by use of actuarial tables, could be included in her gross estate under Helvering v. Hallock, 309 U.S. 106, 60 S.Ct. 444, 84 L.Ed. 604, as applied in Bankers Trust Co. v. Higgins, 2 Cir., 158 F.2d 957. The defendant, however, does not contend that this value, if any, should be included in decedent's gross estate.

I would allow the plaintiffs to recover.

LITTLETON, Judge, joins in the foregoing dissent.