Lillian B. STUDEBAKER and First Bank and Trust Company of South Bend, Indiana, Co-Executors of the Estate of Lillian L. Studebaker, Deceased. Lillian B. Studebaker, Lillian S. Hardy, Mary S. Winder and First National City Trust Company (Formerly City Bank Farmers Trust Company), Plaintiffs,

v.

UNITED STATES of America, Defendant.

Lillian B. STUDEBAKER and First Bank and Trust Company of South Bend, Indiana, Co-Executors of the Estate of Lillian L. Studebaker, Deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 2608, 2609.

United States District Court N. D. Indiana, South Bend Division.

June 28, 1961.

Joseph T. Helling of Crumpacker, May, Beamer, Levy & Searer, South Bend, Ind., for plaintiffs.

Kenneth C. Raub, U. S. Atty., Fort Wayne, Ind., Philip C. Potts, Asst. U. S. Atty., South Bend, Ind. (successor to Hugh A. Henry, Jr., retired), Robert H. Kapp, Atty., U. S. Dept. of Justice, Washington, D. C., for defendants.

GRANT, District Judge.

The above entitled consolidated actions came on regularly for trial before this Court without the intervention of

a jury on October 13, 1960. The plaintiffs were represented by their attorney, Joseph T. Helling of Crumpacker, May, Beamer, Levy & Searer, of South Bend, Indiana, and the defendant by Kenneth C. Raub, United States Attorney, Hugh A. Henry, Jr., and Philip C. Potts, Assistant United States attorneys and Robert H. Kapp, attorney of the United States Department of Justice. Final arguments were presented and heard on January 10, 1961, following the submission of briefs by the parties.

The Court, after carefully considering the pleadings, the stipulation of facts entered into by the parties at the trial, the testimony and documentary evidence introduced at the trial, and the post-trial briefs and final arguments of the parties, now enters its consolidated Findings of Fact and Conclusions of Law, as follows:

### Findings of Fact and Conclusions of Law

Both of the above captioned cases were filed on August 14, 1959, to recover certain federal estate taxes alleged to have been erroneously and illegally assessed and collected by the defendant from the plaintiffs acting on behalf of the estate of Lillian Lingle Studebaker.

At the time of her death on September 20, 1952, the decedent, Lillian L. Studebaker, was 73 years of age. She was survived by a daughter-in-law, Lillian Bartlett Studebaker, the widow of her only child, two granddaughters, Lillian Studebaker Hardy and Mary Studebaker Winder, and several great grandchildren.

The plaintiff, Lillian B. Studebaker (at that time known as Lillian B. Curry) and the First Bank and Trust Company of South Bend, were appointed by the St. Joseph County Probate Court of the State of Indiana, on September 29, 1952, as co-executors of decedent's estate, qualified and have continued to act in such capacity. The plaintiffs, Lillian B. Studebaker, Lillian S. Hardy,

Mary S. Winder and the First National City Trust Company are transferees of assets formerly belonging to the decedent or in which she had an interest.

These actions for refund concern the inclusion or exclusion of two separate trusts of which the decedent was a settlor in the taxable estate of the decedent. Leaving for later consideration the origin and history of these trusts, suffice it to say for now, by way of identification, that the trusts involved are Trust number 10799 and Trust number 19324.

On December 21, 1953, the co-executor filed an estate tax return with the Collector of Internal Revenue at Indianapolis, Indiana, in which only a portion of the corpus of Trust No. 10799 and no part of Trust No. 19324 was included, resulting in the payment of $61,-812.43 as estate tax. In 1956 an audit of the estate tax return resulted in the levy of an additional estate tax assessment in the amount of $173,092.90, including interest and penalties. The additional assessment asserted was in main part due to the inclusion as part of the gross estate of the decedent of the whole of the corpus of both Trust No. 10799 and of Trust No. 19324. Due to a lack of estate funds the co-executors were unable to pay the additional assessment as demanded. The value of the interest held by each of the plaintiffs being in excess of the tax imposed, the plaintiffs paid this additional assessment in amounts proportionate to their respective interests.

On February 10, 1959, two identical claims for refund, each in the amount of $227,847.38, with interest, or such greater amount as was legally refundable, were filed with the District Director of Internal Revenue at Indianapolis, Indiana, the claimants therein joining in the same manner as in the instant cases. Notification of the disallowance of their claims for refund was received by the plaintiffs on July 28, 1959, whereupon these actions were filed on August 14, 1959.

Stipulations of fact were entered into by the parties in the consolidated causes at the time of the pre-trial conference of September 7, 1960 and additional stipulations were filed with the Court at the trial of this cause on October 13, 1960, many of which were adopted by the Court herein.

By its Answer, the defendant denied the right of the plaintiffs in either or both of these consolidated actions to maintain this action for refund. However, the parties have agreed, in open court, at the time of final argument, and the Court now so finds, that either the co-executors or the transferees are proper parties and are entitled to any refunds which the Court may properly find due and owing them.

By its Answer the defendant denied that the plaintiffs were entitled to any credit for Indiana and Illinois Inheritance taxes paid by the estate. However, it has been agreed by the parties, in open Court at the time of final argument, and the Court now so finds, that the plaintiffs are entitled to a credit for inheritance taxes paid to the State of Illinois in the amount of $2,885, and to the State of Indiana in the amount of $6,943.85.

Further, it was agreed by the parties, in open Court at the time of final argument that the plaintiffs are entitled to a refund in the amount represented by taxes, interest and penalties paid and collected on 84778125/318037500ths of the value of the corpus of Trust No. 10799, plus interest, which amount represents the portion of Trust No. 10799 contributed by the decedent's spouse on October 27, 1927.

In January, 1920, the decedent and her husband, John Mohler Studebaker, Jr., executed mutual, but separate, trust indentures in which each was denominated a settlor and the Farmers' Loan and Trust Company of New York was denominated Trustee. The corpus of each trust was composed of both common and preferred stock of the Studebaker Corporation assigned by the respective settlors.

On October 26, 1927, the day before Trust No. 10799 was created, both the decedent and her husband exercised a power which each possessed in connection with the trust created by the other, making the decedent the absolute owner of all right and title to all the shares of the Studebaker Corporation stock contributed to the earlier trust by her husband and having a value of approximately $2,332,593.75, and making John M. Studebaker, Jr., the absolute owner of all right and title to all the shares of the Studebaker Corporation stock contributed to the earlier trust created by the decedent and having a value of approximately $847,781.25.

On October 27, 1927, the decedent and her husband separately assigned all the shares of the Studebaker Corporation stock, acquired the previous day as a result of the termination of the 1920 trusts, to their son, John Mohler Studebaker III, for the limited purpose of having him transfer the securities to a Trust for their joint benefit. Thereupon John Mohler Studebaker III executed a Deed of Trust, styled Trust No. 10799, in which he conveyed the aforementioned securities to Farmers' Loan and Trust Company of New York as Trustee. Subsequent to the creation of Trust No. 10799 neither the decedent nor her husband contributed any additional funds or assets to the Trust.

In addition to the retention of certain powers not pertinent here, the more significant provisions of the Trust were that the income of the Trust was payable to the decedent and her husband, and on the death of either, to the survivor. Upon the death of both the decedent and her husband, the Trust terminated and the principal became payable to their only son, John Mohler Studebaker III, or in the event the latter preceded both the decedent and her husband in death, the principal was payable to his children, per stirpes. The decedent and her husband reserved to themselves, during their joint lives,

the right to jointly terminate the trust and cause the Trustee to return the corpus to them or either of them as they might direct. Upon the death of either the decedent or her husband, the power to terminate ceased and the Trust became irrevocable.

On June 3, 1943, the decedent and her husband joined in the execution of an instrument whereby they relinquished their previously reserved power to alter, amend, revoke or terminate Trust No. 10799, thereby making the same irrevocable in all respects.

On November 8, 1945, the decedent's son, John Mohler Studebaker III, died, leaving as his survivors his wife, Lillian B. Studebaker and two daughters, Lillian S. Hardy and Mary S. Winder.

Subsequently, on April 27, 1947, the decedent's husband, John Mohler Studebaker, Jr., died, predeceasing the decedent, Lillian L. Studebaker, who died September 20, 1952.

Following the decedent's death, pursuant to the alternate provisions of the Trust relating to survivorship, the Trust terminated and the corpus was distributed in equal shares to Lillian S. Hardy and Mary S. Winder, the surviving children of the decedent's son, John M. Studebaker III.

Upon the basis of the above stated facts as the Court has found them to be, the issue presented to the Court for decision may be briefly stated as follows:

> Is any portion of Trust No. 10799 exempt from Federal Estate Tax by virtue of the provisions of the Technical Changes Act of 1953, which provides that the value of an inter-vivos transfer made prior to March 4, 1931, in which the grantor retained a life estate, would be exempted from the Federal Estate Tax where the decedent-grantor died subsequent to February 10, 1939?

At the time of the death of the decedent on September 20, 1952, there was in full force and effect, Section 811 of the Internal Revenue Code of 1939, 26 U.S.C.A., § 811, which provides as follows:

"§ 811 Gross estate.

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

"(a) * * *

"(b) * * *

"(c) Transfers in contemplation of, or taking effect at, death

"(1) General rule. To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

"(A) in contemplation of his death; or

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death

(i) in possession or enjoyment of, or the right to the income from, the property, or

(ii) the right, either alone or in conjunction with any person to designate the persons who shall possess or enjoy the property or the income therefrom; or

"(C) intended to take effect in possession or enjoyment at or after his death.

"Subparagraph (B) shall not apply to a transfer made before March 4, 1931; nor shall subparagraph (B) apply to a transfer made after March 3, 1931 and before June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of

the joint resolution of March 3, 1931 (46 Stat. 1516)."

As an aid to better understanding, a brief historical sketch of the Supreme Court decisions and Congressional action, beginning with May v. Heiner, 1930, 281 U.S. 238, 50 S.Ct. 286, 287, 74 L.Ed. 826, and culminating in the Technical Changes Act of 1953 would appear to be necessary.

Prior to March 3, 1931, property transfers under which the life income was reserved to the transferor had been included in the gross estate by the Treasury Department under the "intended to take effect in possession or enjoyment at or after * * * death" language of early estate tax statutes. Section 402(c), Revenue Act of 1918, c. 18, 40 Stat. 1057; Section 402(c), Revenue Act of 1921, c. 136, 42 Stat. 227; Section 302(c), Revenue Act of 1924, c. 234, 43 Stat. 253; Section 302(c), Revenue Act of 1926, c. 27, 44 Stat. 9.

In 1930 the Treasury's established interpretation of the statute was reversed by the Supreme Court's decision in May v. Heiner, supra. Under the facts of that case, the decedent had made a transfer in trust, retaining only a life estate for herself after her husband's death, with remainder over to her children. The Supreme Court held that the corpus was not includible in the gross estate under the "intended to take effect" language of Section 402(c) of the Revenue Act of 1918. Approximately one year later, on March 2, 1931, the Supreme Court reaffirmed the May v. Heiner decision when it issued three per curiam decisions upon the authority of May v. Heiner; Burnet v. Northern Trust Co., 283 U.S. 782, 51 S.Ct. 342, 75 L.Ed. 1412; Morsman v. Burnet, 283 U.S. 783, 51 S.Ct. 343, 75 L.Ed. 1412 and McCormick v. Burnet, 283 U.S. 784, 51 S.Ct. 343, 75 L.Ed. 1413. The next day, March 3, 1931, the Acting Secretary of the Treasury, fearing "a loss in excess of one-third of the revenue derived from the Federal Estate tax, with anticipated refunds in excess of $25,-000,000", appealed to Congress, resulting in both Houses of Congress unanimously passing, and the President signing, what has come to be known as the Joint Resolution of March 3, 1931, which, in nullifying the Supreme Court's ruling in May v. Heiner and the three per curiam cases of a day earlier, provided for the inclusion in the gross estate of all property,

"To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, *including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or income therefrom * *.*"

The emphasis is added to indicate the additions made by the amendments to § 302(c) of the Revenue Act of 1926. Joint Resolution of March 3, 1931, 46 Stat. 1516–1517. Commissioner of Internal Revenue v. Estate of Church, 1949, 335 U.S. 632, 69 S.Ct. 322, 337, 93 L.Ed. 288.

The Joint Resolution was not made retroactive, and consequently May v. Heiner controlled all pre-March 3, 1931 transfers of the type involved therein.

The law achieved a static condition with respect to transfers with a retained life interest until January 17, 1949, when the Supreme Court expressly overruled May v. Heiner in its decision of Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 69 S.Ct. 322, 337, 93 L.Ed. 288. In the Church case, the Court held that retention of income for life was itself enough to require inclusion of the otherwise non-taxable transfer under the "intended to take effect" clause of the Federal Estate Tax Statute, Section 811(c).

The following year Congress once again acted in response to the decision of the Supreme Court, enacting Sections 7 and 8 of the Technical Changes Act of 1949, c. 720, 63 Stat. 891. That Act amended Section 811(c) of the 1939 Code as follows:

"(a) Section 811(c) of the Internal Revenue Code (relating to transfers in contemplation of or taking effect at death) is hereby amended to read as follows:

"(C) Transfers in contemplation of, or taking effect at death.—

"(1) General rule. To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise

"(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom * * *

"(C) intended to take effect in possession or enjoyment at or after his death * * *

"(b) The amendment made by subsection (a) shall be applicable with respect to estate of decedents dying after February 10, 1939. * * * The provisions of section 811(c) (1) (B) of such code shall not, in the case of a decedent dying prior to January 1, 1950, apply to—

"(1) a transfer made prior to March 4, 1931 * * *."

On August 15, 1953, Congress passed the Technical Changes Act of 1953 which eliminated the January 1, 1950, limitation making the tax exemption as to transfers made prior to March 4, 1931, applicable to the estates of all decedents dying after February 10, 1939. It provided, in pertinent part, that:

"(a) Decedents Dying After February 10, 1939.—Paragraph (1) of section 811(c) (relating to the inclusion of certain interests in the decedent's gross estate) is hereby amended by inserting after subparagraph (c) the following:

"*Subparagraph (B) shall not apply to a transfer made before March 4, 1931 * * * unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931. (46 Stat. 1516)*

"(d) Effective Date. The amendment made by subsection (a) shall apply only with respect to estates of decedents dying after February 10, 1939. 67 Stat. 615, 623 (August 15, 1953)." (Emphasis supplied).

The manifest intent of Congress in providing for an exemption from Federal Estate Tax of pre-March 4, 1931, transfers was to avoid penalty to those taxpayers (their property being otherwise beyond the ambit of the Federal Estate Tax), who, in reliance on May v. Heiner and the Joint Resolution of March 3, 1931, had refrained from divesting themselves of retained life estates created prior to March 3, 1931. McNichol's Estate v. Commissioner, 3 Cir., 1959, 265 F.2d 667, 673; Smith v. United States, 1956, 139 F.Supp. 305, 134 Ct.Cl. 136; Sen.Rep. No. 831, 81st Cong., 1st Sess., pp. 7–8 (1949–2 Cum. Bull. 289, 293–294), 2 U.S.C. & Cong. Serv., 81st Cong. 1st Sess. 1949, pp. 2172, 2180.

From the foregoing brief history it becomes clear that the ultimate disposition of the question of the exemption or inclusion of any part of the corpus of Trust No. 10799 in the decedent's estate for Estate Tax purposes pivots on the Court's interpretation of the italicized provisions of the Technical Changes

Act of 1953 as set forth above. It is the plaintiff's position that Trust No. 10799 qualifies for an exemption irrespective of the reservation by the decedent and her husband of a power to terminate the trust and return the corpus to them or either of them. Plaintiffs assert that the execution of the Trust in October, 1927, constituted a "transfer" within the meaning and intent of the Technical Changes Act of 1953. The defendant argues that there was no "transfer" for Estate Tax purposes in October, 1927, because the reservation by the decedents of a power to terminate the Trust rendered the "transfer" incomplete until June 3, 1943, when the decedent and her husband renounced, released and relinquished their power of termination of the trust. Thus, contends the defendant, there was no "transfer" prior to March 4, 1931, making the Technical Changes Act of 1953 wholly inapplicable to the provisions of Trust No. 10799. Further defendant asserts that inasmuch as the decedent reserved the power to terminate the trust, the trust would have been includible by virtue of other provisions of the Estate Tax Law in effect on March 4, 1931, as well as at her death, and that therefore, Trust No. 10799 would not have been "includible in the decedent's estate by reason of the amendatory language of the joint resolution of March 3, 1931", as required by the Technical Changes Act of 1953. Finally, the defendant contends that the rule of May v. Heiner and the Joint Resolution of March 3, 1931, relate only to irrevocable trusts wherein the settlor has retained only a life estate and has completely divested himself of any other control therein. This Court is in accord with the position of the defendant for the reasons and on the authorities set forth below.

In deciding May v. Heiner, the Supreme Court stressed the irrevocable character of the trust before it and relied heavily on Reinecke v. Northern Trust Co., 1929, 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, in which the Court had treated differently trusts which were revocable from those which were beyond recall by the settlor.

In the Reinecke v. Northern Trust Co. case two of the seven trusts there involved had reserved powers of revocation in the settlor alone, while in the other five trusts, revocation could be effected only with the consent of one or more of the beneficiaries. All the trusts involved the retention of a life estate in the settlor.

In holding that the revocable trusts were includible in the taxable estate of the decedent, even though created prior to the passage of the Estate Tax Law, the Supreme Court stated:

"As to the two trusts, it is argued that since they were created long before the passage of any statute imposing an estate tax, the taxing statute, if applied to them is unconstitutional and void because retroactive within the ruling of Nichols v. Coolidge, 274 U.S. 531 [47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081]. In that case it was held that the provisions of the similar § 402 of the 1918 Act, 40 Stat. 1097, making it applicable to trusts created before the passage of the act was in conflict with the Fifth Amendment of the federal constitution and void, as respects transfers completed before any such statute was enacted. But in Chase National Bank [of City of New York] v. United States [278 U.S. 327, 49 S. Ct. 126, 73 L.Ed. 405], decided this day * * * the decision is rested on the ground * * * that a transfer made subject to a power of revocation in the transferor, terminable at his death, is not complete until his death. Hence § 402, as applied to the present transfers, is not retroactive, since his death followed the passage of the statute." 278 U.S. at page 345, 49 S.Ct. at page 124. (Emphasis supplied.)

The Supreme Court went on to hold that the remaining five trusts were exempt from the Estate Tax and stated:

"Since the power to revoke or alter was dependent on the consent of the one entitled to the beneficial, and consequently adverse, interest, the trust, for all practical purposes, had passed as completely from any control by decedent which might inure to his own benefit as if the gift had been absolute." 278 U.S. at page 346, 49 S.Ct. at page 125.

In May v. Heiner, the Court quoted with approval, the following language of its earlier decision in Reinecke:

"In its plan and scope the tax is one imposed on transfers at death or made in contemplation of death and is measured by the value at death of the interest which is transferred. * * * One may freely give his property to another by absolute gift without subjecting himself or his estate to a tax, but we are asked to say that this statute means that he may not make a gift inter vivos, equally absolute and complete, without subjecting it to a tax if the gift takes the form of a life estate in one with remainder over to another at or after the donor's death. It would require plain and compelling language to justify so incongruous a result and we think it is wanting in the present statute. * * *

"In the light of the general purpose of the statute and the language of § 401 explicitly imposing the tax on net estates of decedents, we think it at least doubtful whether the trust or interests in a trust intended to be reached by the phrase in § 402(c): 'to take effect in possession or enjoyment at or after his death' include any others than those passing from the possession, enjoyment or control of the donor at his death and so taxable as transfers at death under § 401. That doubt must be resolved in favor of the taxpayer. * * *" 281 U.S. at page 244, 50 S.Ct. at page 287.

In quoting, with apparent approval, the language from its earlier decision in Reinecke, the Supreme Court, in effect, recognized the difference in treatment to be received by revocable trusts as compared to irrevocable trusts of the type then before it in May v. Heiner. That Congress so understood this distinction is borne out by the following statement from the Senate Report pertaining to Section 803 of the Revenue Act of 1932, c. 209, 47 Stat. 169, by which Congress amended the Joint Resolution of 1931.

"The purpose of this amendment to section 302(c) of the revenue act of 1926 is to clarify in certain respects the amendments made to that section by the Joint Resolution of March 3, 1931, which were adopted to render taxable a transfer under which the decedent reserved the income for his life. *The Joint Resolution was designed to avoid the effect of decisions of the Supreme Court holding such a transfer not taxable if irrevocable* and not made in contemplation of death." (Emphasis supplied.) S.Rep. No. 665, 72d Cong. 1st Sess.P. 49 (1939–1 Cum.Bull. (Part 2) 496, 532)).

Again, in 1949, when Congress, in response to the Church decision a year earlier, passed the Technical Changes Act of 1949, the Report of the Senate Finance Committee (S.Rep. No. 831, 81st Cong. 1st Sess., pp. 7–8; 1949–2 Cum. Bull. 278, 293–294) very carefully expressed its understanding that both May v. Heiner and the Joint Resolution of March 3, 1931, relate only to irrevocable trusts:

"In the Joint Resolution of March 3, 1931, Congress created a new estate tax rule with respect to transfers after March 3. It left unchanged the rule in effect for transfers before that date. It is the opinion of your committee that the old rule should have been con-

tinued in effect with respect to such transfers until changed by legislation. Since the rule has been changed by the Supreme Court in the Church opinion your committee believes that the Congress should act to restore the estate tax law to what it was prior to the Church opinion.

\* \* \* \* \* \*

"The operation of the amendment made by this section may be illustrated by the following example. A, in 1928, transferred property in trust retaining a life estate and giving the remainder indefeasibly to B and his heirs. Since the transfer was made before March 4, 1931, and the *only right or interest retained by the decedent in the property consists of an estate for his life,* the transfer is not 'intended to take effect in possession or enjoyment at or after his death' within the meaning of section 811(c) as amended by this section of the bill. *Hence, the property is not includible in the gross estate unless the transfer was made in contemplation of death or unless the property falls within some other subdivision of section 811.*

"The *amendment* made to section 811(c) by this section of the bill does not, however, *similarly change the estate tax treatment of a transfer made before March 4, 1931 in case the decedent retained both a life estate and some other right or interest in the transferred property.* \* \* \* " (Emphasis supplied.)

While not conclusive, the above quoted Senate Reports are both helpful and informative. They demonstrate clearly the intention on the part of the members of the Senate to associate May v. Heiner with irrevocable transfers only. Notwithstanding that the amendments proposed by the Senate in the last stated Report were not accepted in their entirety by the House and were modified to some extent in conference (H. Conference Rep. No. 1412, 81st Congr.Sess.,

p. 6 (1949–2 Cum.Bull. 295–296–297) and in the Act as finally passed, the changes and modifications made were not at variance with the belief and intent that the exclusion of pre-March 4, 1931 transfers was limited to irrevocable transfers only.

Congress was not alone in its belief that the rule of May v. Heiner was intended to apply only to irrevocable transfers. Several subsequent Court decisions discussing May v. Heiner, stress the irrevocable nature of the trust there involved. See Commissioner of Internal Revenue v. Estate of Church, 1949, 335 U.S. 632, 640–641, 69 S.Ct. 322, 337, 93 L.Ed. 288; McNichol's Estate v. Commissioner, 3 Cir., 1959, 265 F.2d 667, 672; Tait v. Safe Deposit & Trust Co. of Baltimore, 4 Cir., 1935, 74 F.2d 851, 855; Sargent v. White, 1 Cir., 1931, 50 F.2d 410, 411 affirming D.C.D.Mass.1930, 46 F.2d 79; Commissioner of Internal Revenue v. Morsman, 8 Cir., 1930, 44 F.2d 902, 904–905; Hodgkins v. Commissioner, 7 Cir., 1930, 44 F.2d 43, 45; Smith v. United States, 1956, 139 F. Supp. 305, 308, 134 Ct.Cl. 136.

It is interesting to note that most of these cases were decided shortly after May v. Heiner, at a time when the extent and impact of the decision was foremost in the minds of both the attorneys and the courts who were called upon to interpret its holding. Both the Sargent and Smith cases, supra, are particularly applicable here since in each a life estate was retained by the decedent in a trust along with the power to revoke in Smith and a contingent remainder in Sargent. In each case the courts held that the rule of May v. Heiner was not applicable inasmuch as its application was restricted to the retention of a life estate in an irrevocable trust only.

■ The plaintiff's contention that the word "transfer" as contained in the Technical Amendments Act of 1953, supra, and as used currently in Section 2036 of Title 26 United States Code, relates "to the transfer of the title of the

property to the trustee and the execution and delivery of the trust instrument", is erroneous and cannot be sustained by this Court. This Court feels that on authority of Reinecke v. Northern Trust Co., supra; Burnet v. Guggenheim, 1933, 288 U.S. 280, 53 S.Ct. 369, 77 L.Ed. 748 and Smith v. United States, supra, there was no "transfer" at the time of the creation of Trust No. 10799 on October 27, 1927, due to the reservation by the decedent of a power to terminate the trust, which rendered the attempted "transfer" incomplete for Estate Tax purposes. Instead, the "transfer" within the meaning of the Estate Tax law took place on June 3, 1943, when the decedent and her husband executed the instrument whereby they renounced, released and relinquished their power of termination of the trust.

In the Reinecke case, the Supreme Court specifically stated "that a transfer made subject to a power of revocation in the transferor, terminable at his death, is not complete until his death." [278 U.S at page 346, 49 S.Ct. at page 125.] The Court pointed out that this was the distinguishing feature which removed Reinecke from the holding in Nichols v. Coolidge, 1927, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184. Both cases involved trusts created prior to the passage of the Federal Estate Tax statute. In both the decedent-settlor died after the passage of the statute. In Nichols the settlor retained only a life estate in the trust, otherwise having divested himself of all other interests. The Supreme Court held that if applied to the type of completed transaction there involved, the Estate Tax law would be unconstitutional and void, because retroactive. However, in Reinecke, the Estate tax statute was held to be constitutional and not retroactive since the transfer was not complete until the decedent's death, and the decedent's death took place after the passage of the statute.

In Guggenheim, supra, the Supreme Court in construing a provision of the 1924 Gift Tax Statute providing for a "tax * * * upon the transfer by a resident by gift * * *," held that the "transfer" did not take place at the time of making a gift with a retained power of revocation, but only at the time of the relinquishment of the power of revocation. Justice Cardozo, who wrote the opinion for the Court, stated that the Gift tax and the Estate tax are closely related and are in pari materia. This Court holds, over the objection of the plaintiff, that the rule laid down in Guggenheim is applicable to the provisions of the Estate tax here under consideration.

Finally, as regards Trust No. 10799, the defendant asserts that inasmuch as the decedent retained the power to terminate the trust, it would have been includible for Estate tax purposes by virtue of other provisions thereof in effect prior to March 4, 1931, and continuing without interruption to the present day. The defendant contends that inasmuch as Trust No. 10799 would have been includible irrespective of the Joint Resolution of March 3, 1931, it fails to qualify for the exclusion provided by the Technical Changes Act since that Act applies only to a transfer with a retained life estate which would not have been otherwise includible except for Congress' passage of the Joint Resolution of March 4, 1931, nullifying May v. Heiner.

It has been stated in a leading text that:

"Gratuitous lifetime transfers subject to revocation by the decedent have always been subject to estate tax, even before there was an express provision on revocable transfers. * * * Since 1924, the Statute has specifically done so. Stephens & Marr, The Federal Estate and Gift Taxes 'A Guide To the Law', The Tax Club Press, 1959."

Section 302 of the Internal Revenue Code of 1924 provided that:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real

or personal, tangible or intangible, wherever situated—

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for a fair consideration in money or money's worth."

This Court here holds that inasmuch as Trust No. 10799 would have been includible under the provision relating to the reservation of a power to revoke in the settlor, it fails to qualify for the exclusion provided by the Technical Changes Act of 1953 since it would not "have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931."

In summary, therefore, it is the holding of this Court that 233259375/3180-37500ths of the corpus of Trust No. 10799, representing the contribution by the decedent, is includible in the taxable estate of the decedent for the reasons heretofore stated.

## Trust No. 19324

Trust No. 19324 was created by the decedent on October 30, 1937, becoming effective on November 4, 1937, by the terms of which she conveyed securities of substantial value to the Farmers Loan & Trust Company of New York (now First National City Trust Company), as Trustee, with a reservation of the income from the trust to herself for life and an unqualified right to alter, amend, revoke or terminate the trust and to substitute trustees. In addition, with respect to the principal, alternative disposition of the remainder interest was made, depending on which members of her family the decedent survived.

The sudden death of John M. Studebaker III, the only child of the decedent and her husband, John M. Studebaker, Jr., on November 8, 1945, leaving as his survivors his widow, Lillian Bartlett Studebaker and two married daughters, Lillian Studebaker Hardy and Mary Studebaker Winder, had not been anticipated in the family planning, and as a result, his widow, Lillian Bartlett Studebaker, had been by-passed as to a considerable portion of the family wealth.

Subsequent to the death of the decedent's husband on April 27, 1947, the decedent found it necessary to rearrange the family affairs, executing the first amendment to Trust No. 19324 on June 30, 1947, whereby, upon the decedent's death, the income from this trust should be paid to her daughter-in-law, Lillian Bartlett Studebaker, for life, and upon the death of the latter, equal separate income trusts would be established for each of the granddaughters, Lillian S. Hardy and Mary S. Winder, with remainder over, on their death, to the latter's children.

Shortly thereafter, on July 8, 1947, the decedent deeded the fee interest in an Illinois farm to Lillian Bartlett Studebaker, reserving a life estate to herself, and on the same date the decedent executed her Last Will and Testament, naming her daughter-in-law, Lillian Bartlett Studebaker, and her two grandchildren, Lillian S. Hardy and Mary S. Winder, as equal beneficiaries of one-third of her estate.

At the time of the death of John M. Studebaker III there was in existence a trust which he had created in 1937, by the provisions of which his widow, Lillian Bartlett Studebaker, was to receive one third (⅓) of the principal outright, and the right to the income from the remaining two-thirds so long as she should live and remain unmarried. The income from this interest in the 1937 trust created by her late husband con-

stituted approximately fifty per cent (50%) of her taxable income in 1949 and 1950.

On or about Christmas, 1950, Lillian Bartlett Studebaker became engaged to marry Robert Curry, the marriage date being set for April 1, 1951. Suffice it to state that the relationship between the decedent and Lillian Bartlett Studebaker was a close one, they having exchanged visits almost daily, vacationed together and dined together on an almost daily basis. The decedent, while in favor of the proposed marriage expressed concern over the loss, by Lillian Bartlett Studebaker, of the substantial portion of her income as represented by the trust income which she would forfeit upon her marriage to Mr. Curry. For that reason, the decedent sought to replace the income about to be lost by Lillian Bartlett Studebaker, and originally considered transferring to the latter, as a wedding present, the right to the income which the decedent was receiving from her Illinois farm. After abandoning this proposal, the decedent did, on April 1, 1951, again exercise her power to amend Trust No. 19324. By this amendment she relinquished her life interest in the trust income in favor of Lillian Bartlett Studebaker, thus giving the latter the immediate right to the income therefrom. In addition, by means of a separate paragraph the decedent also relinquished her previously reserved power to alter, amend, revoke or terminate the trust and to substitute trustees, in the following words:

"Article Thirteenth: The trust under this indenture is irrevocable and the grantor shall have no power, at any time, to alter, amend, terminate or revoke this trust indenture or the trusts created thereunder, or any of them."

The effect of this latter paragraph of amendment was to make the remainder interest of Lillian S. Hardy and Mary S. Winder absolute and complete. The above stated Article Thirteenth, being part of subdivision B of the instrument of amendment, was preceded by the following clause:

"While neither the grantor nor the trustee believes this subdivision B will ever become effective, it is included herein for the express purpose of avoiding the possibility of any part of the property constituting the trust being or becoming a part of the estate of the grantor, or her husband, John M. Studebaker, Jr., and passing under her will, or his will, to their respective executors or administrators."

The vesting of the remainder interest in Lillian S. Hardy and Mary S. Winder effected by the April 1, 1951, amendment to Trust No. 19324 resulted in a gift tax of $119,156.62. Inasmuch as the decedent did not have available sufficient funds with which to pay the gift tax, she necessarily secured a loan of $90,000 from her bank in New York, the obligation to repay being undertaken by Lillian S. Hardy and Mary S. Winder, the true beneficiaries of the 1951 amendment, who gave their demand note to the bank therefor. The whole of the loan was repaid by the latter out of the corpus of another trust which they received on the decedent's demise.

On the date of her death, September 20, 1952, approximately 18 months subsequent to the April 1, 1951 amendment to Trust No. 19324, the decedent was 73 years of age. The value of Trust No. 19324 has been agreed and stipulated by and between the parties to have been $557,692.17 on the date of decedent's death.

On December 21, 1953, the executors filed the Federal Estate tax return for the estate of Lillian Lingle Studebaker wherein they did not include the corpus of Trust No. 19324 in the gross estate of the decedent. The District Director of Internal Revenue, Indianapolis, Indiana, determined that the powers relinquished by the April 1, 1951, amendment to Trust No. 19324, were relinquished in contemplation of death and included the corpus thereof in the decedent's gross estate and accordingly assessed a timely

deficiency in estate tax against the estate. The executors and beneficiaries, having paid the deficiency, timely filed a claim for refund, upon rejection of which the instant action was brought.

The question presented, i. e., whether Trust No. 19324 is includible in the gross estate of the decedent by virtue of the provisions relating to contemplation of death transfers, being basically a question of fact, the applicable principles of law of which are well established, more readily lends itself to a more speedy determination than did the issue involved in Trust No. 10799. Accordingly, the Court will not dwell at length in its determination of this issue.

Counsel for the plaintiff argues that the dominant motive controlling the action taken by the decedent in effecting the transfer by her amendment to Trust No. 19324 on April 1, 1951, was to provide her daughter-in-law, Lillian Bartlett Studebaker, with income to supplement the anticipated loss of income resulting from the latter's impending marriage to Robert Curry, and that such motive was clearly one associated with life, rather than death, and thus not "made in contemplation of death".

Counsel for the plaintiff rejects as artificial and wholly unreal in its application to the facts of the instant case the theory propounded by the Government that the April 1, 1951, amendment effected not one, but two gifts—that giving the income to Lillian Bartlett Studebaker being one associated with life, whereas that irrevocably vesting the remainder in Mary S. Winder and Lillian S. Hardy being in contemplation of death. The Court cannot agree with counsel that a finding of a two-fold gift is unrealistic since each involved different considerations and each could and would have been valid in the absence of the other. Accordingly, the Court here finds that the April 1, 1951, Amendment to Trust No. 19324, effected two separate and distinct transfers or gifts, the first being the income from the trust to Lillian Bartlett Studebaker and the second being the transfer, irrevocably, of the remainder interest in Trust No. 19324 to the grandchildren of the decedent.

Initially the Government all but concedes that the gift of the immediate right to the income from Trust No. 19324 to Lillian Bartlett Studebaker had, as its dominant motive, a motive associated with life, i. e., the replacement of the income expected to be lost by the latter's marriage to Robert Curry.

The Court here so finds, and orders that a refund of Federal Estate taxes be made to the plaintiffs on that value of Trust No. 19324 which is represented by the gift of income heretofore erroneously assessed and collected by the defendant.

The determination whether the irrevocable transfer of the remainder interest in Trust No. 19324 to the decedent's granddaughters, Mary S. Winder and Lillian S. Hardy, was a transfer in contemplation of death within the meaning of Sections 811(c) (1) (A) and 811*(l)* Internal Revenue Code of 1931 (now Title 26 U.S.C. § 2035(a) (b), Internal Revenue Code of 1954) and thus includible in the decedent's gross estate, while somewhat more difficult than the identical determination with respect to the gift of income, become equally apparent upon examination.

Section 811(c) (1) (A) and Section 811*(l)* of the Internal Revenue Code of 1939 provided in pertinent part as follows:

"Sec. 811 Gross estate.

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States * * *

"(c) * * *

"1. *General Rule*—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona

fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

"(A) in contemplation of his death * * *

*(l) Contemplation of death.* If the decedent within a period of three years ending with the date of his death (except in case of a bona fide sale for an adequate and full consideration in money or money's worth) transferred an interest in property, relinquished a power, or exercised or released a power of appointment, such transfer, relinquishment, exercise or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of subsections (c), (d) and (f); but no such transfer, relinquishment, exercise or release made prior to such three-year period shall be deemed or held to have been made in contemplation of death."

■■ The power to alter, amend, revoke or terminate the trust having been relinquished by the decedent within three years of her death, there is a rebuttable presumption that the transfer here in question was made in contemplation of death. The burden of proving by the fair preponderance of evidence that the transfer was not one in contemplation of death is cast upon the plaintiff herein. This Court, after careful consideration of the facts, now finds that the plaintiffs have failed to sustain their burden. Accordingly, the Court holds that the relinquishment of the power to alter, amend, revoke or terminate Trust No. 19324, dated April 1, 1951, whereby the contingent remainder interests of Mary S. Winder and Lillian S. Hardy were made irrevocable, was a transfer in contemplation of death for the reasons stated below.

■ The test for determining whether a transfer is one made in contemplation of death, according to the decisions of the United States Supreme Court in United States v. Wells, 1931, 283 U.S. 102, 51 S.Ct. 446, 75 L.Ed. 867, is necessarily a subjective one in which the trier of fact must determine the state of mind of the donor at the time of the transfer. From a consideration of all the circumstances surrounding the transfer, including statements and expressions of the decedent, the state of the decedent's health at the time in question and all other relevant facts bearing on the intention of the decedent in making the transfer, this Court, in the words of the Supreme Court, must *"detect the dominant motive of the donor* in the light of his bodily and mental condition and thus * * * give effect to the manifest purpose of the statute."* United States v. Wells, 283 U.S. at page 119, 51 S.Ct. at page 452, supra. (Emphasis supplied.) In Allen v. Trust Company of Georgia, 1946, 326 U.S. 630, 636, 66 S.Ct. 389, 392, 90 L.Ed. 367, the Court stated that:

"Whether such a desire was the dominant controlling or impelling motive is a question of fact in each case."

No attempt is made to set forth the many and diverse factors to be considered in determining the intent of the decedent in making the transfer. However, in their excellent treatise entitled Federal Estate and Gift Taxes (1956) Messrs. Loundes and Kramer, at pages 77–81, list the following as factors to be taken into account in determining whether a transfer is in contemplation of death:

"1. The amount of the transfer.

"2. The age of the transferor.

"3. The physical condition of the transferor.

"4. The interval between the transfer and the transferor's death.

"5. The testamentary effect of the transfer.

"6. Nature of the property transferred.

"7. The motive of the transferor."

See, also, Estate of Johnson, 1948, 10 T.C. 680, 688 (wherein the Tax Court lists eleven factors to be considered.)

In the instant case, the defendant asserts that of Trust No. 19324's stipulated value of $557,692.17, the decedent's transfer of her relinquished right to alter, amend, revoke or terminate, represented 75% of the value, the remaining 25% being attributed to the decedent's gift of her life interest in the income to her daughter-in-law, Lillian Bartlett Studebaker. At the time of the April 1, 1951 transfer, the decedent was 72 years of age, and although the evidence of her health is not conclusive, it has been established that she suffered from the painful effects of progressive arteriosclerosis. It must be conceded, however, that the evidence introduced at the trial relating to the health of the decedent at the time of the transfer indicates that she was not bedridden, nor seriously handicapped in her daily affairs. It must be further conceded that the transfer here in question was not prompted by the contemplation of imminent death on the part of the decedent. However, the Supreme Court has stated that this is not the test. There is no requirement that the decedent be on her deathbed at the time of the transfer but only that her reason for making the transfer be predominately prompted by the thought and expectation of ultimate death.

With respect to the interval between the date of the transfer, April 1, 1951, and the date of her death, September 20, 1952, it can only be pointed out that this period of time is inconclusive, being consistent with the absence of the thought of imminent death on the part of the decedent. The realization of the possibility of death within a year or two in the future is certainly not improbable on the part of an ailing, 72 year old person.

The effect of the transfer to the remaindermen was certainly testamentary in nature. They did not gain the immediate right to the enjoyment of their newly acquired interest, but instead had to await the death of the life tenant, Lillian Bartlett Studebaker, their mother. In fact, the motives prompting the relinquishment of the right to alter, amend, revoke or terminate were basically the same as those which prompted the execution, by the decedent, of her Will in 1947, to-wit, to leave her worldly possessions to the natural bounties of her affection after her death. True, by virtue of the April, 1951, amendment, the remaindermen could have come into the possession of the corpus of Trust No. 19324 during the decedent's lifetime upon the demise of Lillian Bartlett Studebaker, before the death of decedent herself. However, this was certainly not in the contemplation of, nor did it prompt the decedent's transfer, in view of the fact that the decedent was considerably older than her daughter-in-law, Lillian Bartlett Studebaker. Consequently, this Court is of the view that the transfer in question was of a testamentary nature with respect to the intention of the decedent.

Both the nature of the interest transferred, and the fact that it represented a substantial portion of the entire estate of the decedent, lend great support to the finding that the decedent's intention in effecting the transfer was to accomplish the disposition of her estate to the same extent as by her earlier 1947 Will without the necessity for, nor the expense of a testamentary plan.

Finally, the motive of the taxpayer, as demonstrated by the evidence, is of particular importance. It is the plaintiff's contention that the dominant motive prompting the transfer of both the income and the remainder interest was a desire on the part of the decedent to effect an income tax saving. On the other hand, the defendant asserts, and convincingly so, that the anticipated income tax savings of $2,250 annually is negligible when compared with the contemplated savings of Federal Estate tax approximating $50,000. It is manifestly clear that no additional income tax saving resulted from the decedent's relinquishment of her power inasmuch as the

entire anticipated annual income tax saving of $2,250 was completely accomplished by the gift of the income from Trust No. 19324 to Lillian Bartlett Studebaker. The two transfers were separate and independent of each other, each designed to accomplish a different tax saving purpose, the transfer of income designed to save income taxes and the transfer of the remainder intended to effect an estate tax savings. The record is replete with evidence establishing that the decision by the decedent to relinquish her retained power resulted from the suggestions of her financial and legal advisors that this be done, to avoid estate taxes. In fact, the decedent's New York attorney, Mr. C. O. Donahue, in a letter to Mr. H. S. Butterweck, Trust Officer of City Bank Farmers Trust Company, which letter is Exhibit C in evidence, stated that having the decedent relinquish her power to remove and substitute trustees was for estate tax purposes.

From this evidence the Court finds that the inducement for effecting the transfer of the remainder interest was the suggestion to the decedent by her financial and legal advisors made for the purpose of freeing the decedent's estate from estate taxes. The Court is mindful that the decedent could, possibly, have rejected these suggestions or adopted them for other reasons. However, evidence tending to establish this possibility is conspicuously absent from the record in this case. Instead, the decedent's ultimate actions were consistent with these suggestions. In the absence of evidence rebutting these facts, this Court concludes that the decedent adopted these suggestions and acted pursuant to them in effecting the transfer of the remainder interest to her granddaughters, Mary S. Winder and Lillian S. Hardy.

For all the reasons stated above, the Court cannot help but conclude, as it does now, that the relinquishment by the decedent of her right to alter, amend, revoke or terminate Trust No. 19324, was a transfer made in contemplation of death within the meaning and intent of the provisions of the Internal Revenue Code. Accordingly, the Court finds that that portion of the value of Trust No. 19324 represented by the transfer of the remainder interest was properly included as part of the taxable estate of the decedent.

The Court therefore orders:

(1) That the plaintiffs are entitled to a credit for Indiana and Illinois State Inheritance taxes.

(2) That the plaintiffs recover Federal Estate taxes previously paid, represented by the transfer of the decedent's life interest in Trust No. 19324.

(3) That the plaintiffs recover such estate taxes previously paid with respect to Trust No. 10799 as represent the contribution to Trust No. 10799 of the decedent's husband, which contribution represented 84778125/318037500ths of the total value of Trust No. 10799.

In all other respects the judgment of the Court is for the defendant.